### McCONNELL BROTHERS v. SLAPPEY et al.

1. Where a deed was admitted in evidence over the sole objection that the word "Randolph" in the caption (purporting to indicate the county of its execution) had been changed to the word "Dougherty," and there was no evidence as to when this was done, and no evidence to show affirmatively that the deed was not recorded, and the ruling admitting the deed was assigned as error, even if the alteration be held to be material, the record is not sufficient to show error.

2. The deed referred to in the second division of the opinion was admissible as an ancient document, although it may not have been executed in such manner as to entitle it to be recorded, and there may not otherwise have been proof of its execution.

3. Parol evidence of the contents of a deed to land in this State is not admissible under the theory that the original deed is in the hands of non-resident grantees who are not parties to the suit, and therefore beyond the power of the court, without making preliminary proof that the deed was not duly recorded.

4. If evidence is inadmissible under the pleadings as they stand at the trial, the court should not admit it over objection on a statement by counsel that he will make an amendment which will authorize the admission of such evidence. The amendment should be first allowed and the evidence afterwards offered to support it.

(a) No amendment was ever made in this case, and the admission of evidence based on a statement of an intention to amend the pleadings was error.

5. It is not erroneous to overrule an objection to evidence where by its terms the objection is predicated upon the existence of facts not disclosed by the evidence at the time the ruling is made.

6. While admitting certain testimony which tended to establish the defendants' plea on the question of fraud, the court erroneously restricted the purposes for which the jury were authorized to consider it.

7. The charge of the court with respect to the recovery by the plaintiffs of a certain amount for having a survey made was not properly adjusted to the pleadings and evidence.

8. The action was in trespass quare clausum fregit, for injury to growing trees by working the same for turpentine and removing the crude gum extracted. The plaintiffs' contention on the trial and certain charges of

the court proceeded as if the action were in trover to recover the value of the gum. The charge was not adjusted to the pleadings, and the measure of damages was erroneously given. The measure of damages in trespass to growing timber, where not wilfully done, is the diminution in market value caused by the trespass. But if the trespass is wilful, the plaintiffs may recover in addition thereto exemplary or punitive damages.

9. In an action in trespass for injury to growing trees the jury may in their discretion calculate what the interest would be on the actual damages from the time of the injury, and allow. it as damages, but are not compelled to do so.

10. Except as above indicated, none of the assignments of error were of such character as to require the grant of a new trial.

11. The evidence does not demand a verdict for either party upon any view insisted upon in the briefs of counsel before this court. The general grounds of the motion for new trial are not further dealt with. But as the case will go back for another trial, attention is called to certain matters which may be regarded in giving direction to the case in the future.

FEBRUARY 22, 1910.

Action for trespass.     Before Judge Spence.     Baker superior court.    December 12, 1908.

Mrs. W. F. Slappey, Robert Slappey, Rutherford Slappey, and Mrs. Mary Muse Gillespie instituted suit against McConnell Brothers, a partnership composed of G. B. McConnell and W. H. McConnell. It appears from the allegations of the petition as amended that the plaintiffs claimed title to certain land as heirs at law of Henry J. Slappey, who died in Baker county in 1868 in possession, and that no administration had been granted. It was also alleged, in substance, that the defendants were engaged in the production of turpentine, rosin, etc., and without right or authority from plaintiffs had entered upon the lands, knowing them to be the property of plaintiffs, and in bad faith had "cut and boxed 2150 boxes into the pine trees standing on" the lands in question, and had begun to "operate same for crude turpentine purposes, and carry the same off  .  .  and convert the same from time to time as it was produced to their own use, and are now doing the same, and refuse to account to petitioners for the value of same." It was also alleged: "(4) Petitioners further show that they notified the said McConnell Bros., before they entered upon said two lots and cut the timber thereon, that it belonged to petitioners, and forbade them to cut the same, and that petitioners and McConnell Bros. agreed to have the land line run and abide the same, and that

McConnell Bros. agreed that they would not cut said timber unless the running of the land line showed it to belong to McConnell Bros., and that the expense of so doing would be equally divided between McConnell Bros. and petitioners. That said agreement was in writing, signed by the said McConnell Bros. and petitioners, and under the said agreement the lines were run by the county surveyor, assisted by one Baldy, and the timber cut by the said McConnell Bros. was found to be on the land of petitioners. That said McConnell Bros. disregarded this agreement, and cut said timber, and have used it for turpentine purposes ever since, taking therefrom all of the crude gum, besides damaging the timber and trees on said two lots. (5) Petitioners further show, that the said McConnell Bros., on account of the injury and trespass above set forth, have injured and damaged them in the sum of $500 (five hundred dollars), besides becoming liable to them for one half of the expense of surveying said land, which they agreed to pay, and refused so to do, and your petitioners have paid, amounting to $35.00 (thirty-five dollars)." It was also alleged that on account of bad faith, etc., attending the commission of the wrongs above stated, the defendants were liable to plaintiffs for $100 as attorney's fees. The prayer was for process "and judgment for the above-stated sums." There was no demurrer; but the defendants answered, denying that plaintiffs were the owners of the property on which they had conducted their turpentine operations, and denying that they were guilty of bad faith in reference to the matters charged against them, and insisting that their operations were confined to the lands adjoining the lands of petitioners, which were not claimed by petitioners, and upon which they had lawful right to enter. In regard to the settlement of the disputed line of division, the answer further alleged: "(IV) In answer to the fourth paragraph of said petition, defendants say that before the alleged agreement entered into by them with the plaintiffs, as set forth in said petition, defendants had leased for turpentine purposes from the owners of the lands, known as the Tarver Bob Allen place in the eighth (8th) district of said county, which lands so leased by adjoining the lands set forth in plaintiff's petition, and that on or about the first day of Jan., 1903, defendants, in order to fix and ascertain the boundary of said lands, applied to the processioners of said district, and after due notice to all parties con-

7

cerned, said processioners, together with the county surveyors of said county, proceeded to run and mark anew the lines between said Tarver lands and the said lands of petitioners, that they made their return of said survey according to law, and a protest to said return was filed by plaintiffs in this suit, which protest was over-ruled and dismissed by order of the judge of the superior court of said county; that after said line was so located, run and marked as above set forth, defendants proceeded to cut, box, and use the timber on said Tarver place in accordance with said survey, which survey defendants then honestly believed to be the true line between plaintiffs' and defendants' land, and that according to said survey the timber claimed by plaintiffs to have been cut and damaged belongs to defendants; defendants deny that they have ever entered upon the lands of petitioners or committed any of the acts of trespass mentioned in said petition. Defendants further show that after the dismissal of said protest, as above set forth, petitioners proposed to have the lines in dispute surveyed by two disinterested surveyors, to wit: C. Irvin, county surveyor of Baker county, and one Mr. Baldy, county surveyor of Lee county, Georgia; that defendants, believing that both of said surveyors were disinterested in the location of said line, agreed to have them run and mark said lines. Defendants further say that after the running of said lines they learned that the said Mr. Baldy was the attorney at law for petitioners, that the protest to the original survey above mentioned was filed by said Baldy, as attorney for said petitioners; and that as soon as this was discovered, defendants put petitioners upon notice that they would not abide the result of said last survey; that the said last survey was made principally by the said Baldy; that he arbitrarily dictated the courses, distances, starting points, etc.; that said survey is inaccurate for the reason that there is no evidence of ancient landmarks, nor of enclosure, nor cultivation, nor anything else to sustain it; that there was no measurements made of the lots, no chains nor other implements for ascertaining distances was used. Defendants further say that if by chance they have entered upon any lands of petitioners, they did so honestly, believing they were upon lands of the said Tarver place, and without any intention whatever of injuring or damaging petitioners."

The case came on for final trial and resulted in a verdict for the plaintiffs. The defendants made a motion for new trial, which

being overruled, they excepted. Other facts sufficiently appear in the opinion.

*A. S. Johnson* and *Pope & Bennet,* for plaintiffs in error.

*Jesse W. Walters,* by *Z. D. Harrison,* contra.

ATKINSON, J. 1. One of the grounds of the motion for new trial complains of a ruling by the judge admitting a deed in evidence from John Stanley to Henry J. Slappey, purporting to convey some of the land in dispute, over objection "that the same appeared on its face to have been originally headed 'Georgia, Randolph County,' as showing the place of its execution, and said heading had been altered by the word 'Randolph' being scratched out and the word 'Dougherty' being written in its place, . . without any explanation as to said alteration." It does not affirmatively appear that the alteration was not made until after the execution of the deed, nor that the deed was not registered in accordance with the statute. The Civil Code contains, among others, the following provisions: "§ 3704. If the contract is not set forth as the basis of the action, so as to require a denial on oath, an alteration in a material part requires explanation before it can be admitted as evidence. This preliminary proof is submitted to the court." "§ 5242. If the paper appears to have been materially altered, unless it is the cause of action and no plea of non est factum is filed, the party offering it in evidence must explain the alteration, unless the paper comes from the custody of the opposite party." It is insisted that under these provisions of the code the alterations in the caption of the deed rendered it inadmissible. There is no express reference in the record before this court to the registration of the deed, but it appears to have been admitted in evidence without other objection than as stated above. The judgment refusing a new trial should not be disturbed unless the complaining party makes error affirmatively appear, the error being of such character as to require the grant of a new trial. The presumption in favor of the judgment overruling the motion for new trial will not be overcome so long as the facts disclosed by the record before this court are consistent with any theory upon which the correctness of the judgment could rest. If the deed in question was registered, the alteration would be presumed to have been made by the parties thereto at or before its execution. *Collins* v. *Boring,* 93 *Ga.* 360 (23 S. E. 401). Under this view, the deed objected to would not

have been open to the objection urged if it were registered. The record before this court being silent upon the point of registration of the deed, there is nothing shown affirmatively to take it out of the above rule. Inasmuch as the deed was admitted, and the judge overruled the motion for new trial complaining of its admission, it is presumed that everything was made to appear at the trial which was necessary to render the deed admissible. If there was anything lacking in that respect, the burden was upon the complaining party to affirmatively show it. Therefore, even if the alteration complained of was material, the facts disclosed by the record are insufficient to show affirmatively such error as to require the grant of a new trial.

2. Another ground of the motion for new trial complained of the ruling of the court admitting in evidence a deed from Thomas J. Cox to Henry J. Slappey, over the objections, (1) that it was not so executed as to authorize its admission to record, and (2) there was no other proof of its execution by the subscribing witnesses or otherwise. If the deed was subject to the objections made to its admissibility, it was nevertheless admissible under the provisions of the Civil Code, § 3610, as an ancient document. The deed was dated November 25, 1851, and contained an entry thereon by the clerk of the superior court, showing that it had been recorded November 27, 1875. Other preliminary proof was made, that the plaintiffs who introduced it were heirs of the grantee therein named; that the grantee died in possession of the land during the year 1868; that since the time of his death his heirs have continued in possession. There was no testimony introduced expressly stating that the deed appeared upon its face to be genuine; but as the deed was introduced in evidence, it furnished its own evidence as to appearance of genuineness, which could be determined by mere inspection by the judge. It was, therefore, admissible as an ancient document; and having been admitted, the judgment will not be reversed.

3. The 8th ground of the amended motion for new trial complains of the refusal of the judge to allow a witness for the plaintiffs, while on cross-examination, to be asked by counsel for defendants, "if the land for a trespass upon which the plaintiffs were suing in this case belonged to any of these plaintiffs," at the same time stating that it was expected by the answer of the witness to

prove that the "land had been sold and conveyed by plaintiffs before the alleged trespass was committed to non-residents of the State of Georgia." The objection urged against propounding the question and against the admission of. the answer thereto was "that change in title could not be proved by parol evidence." In support of this ground the plaintiffs in error relied upon the cases of Bowden v. Achor, 95 Ga. 244 (5), (22 S. E. 254), and Miller v. McKinnon, 103 Ga. 553 (29 S. E. 467). The two cases mentioned refer to secondary evidence of · papers which were not authorized to be recorded. The same may be said of the cases of Lunday v. Thomas, 26 Ga. 537, Vaughn v. Biggers, 6 Ga. 188, and Frank v. Longstreet, 44 Ga. 178. In the fifth division of the opinion in the case of Bowden v. Achor, supra, it was said: "Where a paper of any kind is material as bearing upon the issue under investigation, the paper itself is generally the best evidence of its contents. Secondary evidence may be resorted to when the original is inaccessible. The courts of this State have no power to compel the production of a paper in the possession, custody, or control of a person in another State, when such person is not a party to the cause. In such an instance, the paper may well be said to be inaccessible. If it were a duly recorded paper of which a legally certified copy could be obtained, it might be incumbent on the party desiring the benefit of this evidence to produce such copy; but where no such secondary evidence is obtainable, a witness may be permitted to testify to the contents of the original, if within his personal knowledge and he is competent to do so." The reasoning contained in the foregoing excerpt, in so far as it relates to a paper authorized to be recorded, such as a deed conveying land, may to a certain extent. be obiter, but we think the reasoning sound, and approve it as applicable to such a case. See, in this connection, Williams v. Waters, 36 Ga. 454 (2) ; Civil Code, §§ 5173, 5162. If the plaintiffs in the present case had conveyed the land to other persons by a sufficient deed, and it had been recorded, a certified copy would have been higher evidence of the fact of such conveyance than parol evidence. The plaintiffs could only have conveyed the land to others by a written deed, and before admitting parol evidence to show such conveyance, under the theory that the deed was beyond the limits of the State in the hands of non-resident persons who were not parties to the suit, it would be incumbent

upon the defendants to make the further preliminary proof that the deed had not been recorded, thus showing his inability to procure any better evidence than the testimony of the witness.

4. The 11th ground of the amended motion for new trial complains of the admission of certain evidence which was offered to prove certain items of damage arising after the commencement of the action. Objection was made to it upon the ground that the pleadings did not authorize the evidence. Counsel for plaintiffs stated that he would amend later so as to include such items in his pleadings. The court, therefore, admitted such evidence. No amendment was in fact ever made. The admission of this evidence was error. A case should be tried on its pleadings, not on a promise to plead. The ruling was based on an intention to plead, which was never carried out. Such a practice should not be allowed. The court's ruling was based on the statement of the intention to amend, and not on the ground that the evidence was admissible without any amendment.

5. The 12th ground of the amended motion for new trial complained of a ruling of the judge admitting in evidence a certain written agreement between Robert Slappey, and others, with defendants, and others, submitting the matter of fixing certain land lines to the arbitrament of certain surveyors. The objection urged to the admissibility of the evidence was, "that the defendants understood that they were leaving it to disinterested parties, and one of the parties, it appears, was the attorney for the plaintiff, and defendants signed the agreement without that knowledge." At the time the evidence was offered and admitted, there was no evidence tending to show the existence of facts such as recited in the grounds of the objections above quoted. There was evidence of that character introduced later, but no motion was afterwards made to rule out the agreement. There was no error in refusing to exclude the contract on account of the objection.

6. The 13th ground of the amended motion for new trial complains of a ruling by the judge in restricting certain evidence admitted, so that it should not be considered by the jury for the purpose of "ruling out" or "setting aside" a certain survey. The matter in controversy involved the location of certain land lines. The plaintiffs and defendants had entered into an agreement by which the matter of locating the lines was submitted to the ar-

bitrament of two surveyors. The surveyors afterwards agreed upon the location of the lines, and returned a plat in accordance with the survey made by them. An attack was made upon the agreement and the survey made thereunder, upon the ground that both of them were void because of fraud practiced by the plaintiffs upon the defendants, which induced the defendants to enter into the agreement. The evidence offered tended to support the plea of the defendants relative to fraud inducing the contract as above mentioned, and should not have been restricted by the judge so that it could not be considered for that purpose. It was entitled to consideration in support of the defendants' contention that the agreement was void and that the survey made thereunder was not binding upon the defendants. .

7. Relative to the agreement for arbitration on the subject of locating the land lines, as referred to in the preceding division of this opinion, the plea of the defendants, as set forth in the statement of facts, was sufficient, in the absence of special demurrer, to set up such fraud upon the part of the plaintiffs, by misrepresentations as to the interest of one of the surveyors named, as would entitle the defendants to repudiate the agreement. Though there was evidence to support the plea, there was a conflict in the testimony as to whether any representations were made about the interest of the surveyors. The evidence, therefore, did not demand a verdict finding the agreement to be void. In one portion of the charge the judge instructed the jury: "If you should find in favor of the plaintiffs' contentions as to this disputed strip of land belonging to him, you would also find—the plaintiffs would also be entitled to a recovery of $17.50 for the amount paid out to have this survey made." This charge did not clearly present the view that a verdict in favor of the plaintiffs for the amount referred to was dependent upon the validity of the agreement, and that if the agreement was induced by fraud upon the part of the plaintiffs, it would be void, and would not authorize the plaintiffs to charge defendants with one half of the expense of making the survey or to recover it. The charge, without further qualification, was not properly adjusted to the pleadings and evidence.

8. Error is assigned upon several portions of the charge, which relate to the measure of damages. One portion related to a statement of the contentions of the plaintiffs, wherein the jury were

informed that the plaintiffs contended that the turpentine taken from the trees was worth a certain amount of money. In other portions of the charge the jury were instructed that if the trespass was wilful, and in its commission the defendants had acted in bad faith, the measure of damages would be "the full value of the product of the boxes and also for the full proven value of the turpentine taken from the trees and timber and destroyed." The defendants insist that the value of the turpentine taken from the trees was no element of the damages recoverable in this case; and also that the instruction which authorized the recovery of the product from the boxes and, in addition thereto, damages to the trees, in effect permitted the recovery of double damages and was not authorized, although the trespass may have been wilful. By reference to the allegations of the petition as it appears in the statement of facts, it will be observed that the complaint is that the defendants entered upon the lands of the plaintiffs and in bad faith cut certain boxes into the pine trees standing thereon, and had begun to operate the same for crude turpentine purposes, and to carry it off and convert it from time to time as it was produced to their own use, and refused to account to the plaintiffs for its value. The value is nowhere stated, and there is no prayer for the recovery of the product taken from the boxes or for the value thereof. In another portion of the petition the complaint is that the defendants cut the trees and used them for turpentine purposes, taking therefrom all the crude gum, besides damaging the timber and trees on the land, and "on account of the injury and trespass" set forth it was alleged that the defendants had injured and damaged the plaintiffs in the sum of $500, besides becoming liable to them for certain expenses incurred by surveying, and for $100 as attorney's fees on account of the bad faith attending the commission of the wrongs above mentioned. The only prayers were for process "and judgment for the above-stated sums," which, as we have seen, included the cost of surveying, attorney's fees, and "damages" on account of the alleged injury and trespass. The allegations of the petition, construed in connection with the prayers, constitute an action in trespass quare clausum fregit for the recovery of damages to the trees, and in no sense state an action for recovery of the product derived from the trees or its value. Upon the allegations of the petition the case is different from the

case of *Parker* v. *Waycross & Florida R. Co.*, 81 *Ga.* 387 (8 S. E. 871). In that case the cause of action was alleged in two counts, one of which was in trover. It was also different from the cases of *Smith* v. *Gonder*, 22 *Ga.* 355, and *Milltown Lumber Co.* v. *Carter*, 5 *Ga. App.* 344 (63 S. E. 270). These cases involved the cutting down and taking away certain trees from the land of the plaintiff and converting them to the use of the defendants, and the petition contained allegations of the value of the trees and a prayer for its recovery. In the case at bar the injury complained of was not that of cutting down trees and carrying them away. Complaint was made that certain turpentine product was extracted from the trees and taken away, but its value was not alleged, and there was no prayer for the recovery as .such of the value of the turpentine product so taken from the trees. The petition merely alleged that the trees were damaged by taking gum and otherwise working the trees for turpentine purposes. It is thus seen that the complaint is of injury to the freehold, and damages therefrom are sought to be recovered; and that the suit is not for the recovery of the product from the trees or its value. Ordinarily, in trespass quare clausum fregit, the measure of damages would be any reduction in the market value of the trees caused by the injury to them. *L. & N. R. Co.* v. *Kohlruss*, 124 *Ga.* 250 (52 S. E. 166). If the trespass was committed in bad . faith, that fact might be considered by the jury on the question of allowance of "additional damages" to deter the wrong-doer from repeating the trespass. Civil Code, § 3906. This is called "additional damages," but it is in the nature of a penalty. The intent with which the trespass might have been committed could not affect the amount of actual damages recoverable for the injury to the trees. It is provided in the Civil Code, § 3918, "Where plaintiff recovers for timber cut and carried away, the measure of damage is: 1. Where defendant is a wilful trespasser, the full value of the property at the time and place of demand or suit brought, without deduction for his labor or expense. 2. Where a defendant is an unintentional or innocent trespasser, or innocent vendee from such trespasser, the value at the time of conversion, less the value he or his vendor added to the property. 3. Where defendant is a purchaser without notice, from a wilful trespasser, the value at the time of such purchase." But these rules are not

applicable in an action of trespass quare clausum fregit, where the complaint is merely for injury to the freehold and does not seek to recover property taken from the soil or its value. By its terms the rules mentioned apply to actions "where plaintiff recovers for timber cut and carried away." They do not apply where the action is merely for damages to the freehold. The origin and applicability of this section of the code is elaborately discussed in *Milltown Lumber Co.* v. *Carter,* supra. While stating the contentions of the plaintiffs the charge excepted to in the present case was misleading in its reference to the value of the property taken; and other portions of the charge, as to the measure of damages to be applied, were erroneous.

9. Complaint is made of another portion of the charge, wherein the judge instructed the jury to the effect that in the event they found that the plaintiffs were entitled to recover they "should" also allow interest from the time the trespass was committed. The criticism upon the charge was that "it instructed the jury they should find interest for the plaintiffs as a matter of law, whereas the correct rule is that they should or should not find interest as they deem proper in their discretion." As we have seen in the eighth division of this opinion, the action was for unliquidated damages arising from trespass. In such cases the jury may in their discretion calculate what would amount to interest from the time of the injury and allow it as damages, but are not bound to do so. *Gress Lumber Co.* v. *Coody,* 104 *Ga.* 611 (30 S. E. 810); *Western & Atlantic Railroad Co.* v. *McCauley,* 68 *Ga.* 818.

10. Except as above indicated, when the charge is considered in its entirety, and in connection with all the evidence, none of the objections thereto, as contained in the various grounds of the motion for new trial, nor any of the other assignments of error were of such character as to require the grant of a new trial for any reason urged before this court.

*Judgment reversed. All the Justices concur.*