### GILMER *v.* HARRISON, administratrix, *et al.*

1. The evidence examined; and it is held that it was error to direct the verdict which was entered in the case.
2. The statute provides that a registered deed shall be received in evidence without further proof, unless the maker or one of his heirs or the opposite party will file an affidavit of forgery. Prima facie any alteration which appears in a registered deed will be presumed to have been made by the parties at or before the time of the execution of the deed. In the absence of an affidavit of forgery, such registered deed is admissible in evidence without explanation of the alteration.
3. A deed purporting to have been executed by attorneys in fact is admissible as color of title, although the power of attorney be not produced.
4. A quitclaim deed to land, containing recitals of fact concerning the conditions under which it was executed, properly attested for record, and duly recorded, is admissible in evidence as a registered deed; but the recitals of fact therein contained are not evidence of the truth of such recitals as against one not a party to the deed, or his privy.

5. The tax digests of a county, which disclosed that a certain person made no returns for those years, were inadmissible to impeach a witness who testified that such person offered during those years to lend money to another upon his giving a security deed to land, which the latter refused to give.

APRIL 12, 1917.

Appeal. Before Judge Wright. Chattooga superior court. March 23, 1916.

B. F. Gilmer died in possession of two adjoining lots of land known respectively as lots 95 and 112 in the fourteenth district of the fourth section of Chattooga county. He had been twice married. Administration was granted upon his estate, and his widow applied to have a dower set apart to her out of his estate. The administrator obtained an order for the sale of both lots of land, and was proceeding to sell the same when a claim to lot 95 was filed by the administratrix of the first wife of B. F. Gilmer. To the application of the widow for dower the administratrix of the first wife filed objections on the ground that lot No. 95 constituted no part of the estate of B. F. Gilmer. An order was taken consolidating the cases, and directing that the issues involved in both be determined together. After hearing the evidence the court directed a verdict against the right of the applicant to have dower assigned from lot 95, and in favor of the claimant as against the administrator who was undertaking to sell lot 95; and judgments were duly entered upon these verdicts. The applicant for dower sued out a bill of exceptions, complaining of the direction of the verdict and of certain interlocutory rulings respecting the admissibility and the exclusion of evidence.

*John D. & E. S. Taylor,* for plaintiff.

*Maddox & Doyal* and *Wesley Shropshire,* contra.

EVANS, P. J. · (After stating the foregoing facts.)

1. The issues in both cases revolve around the ownership of lot 95 at the time of the death of B. F. Gilmer. The applicant for dower asserts his ownership, and the administratrix of his first wife contends that it belonged to her intestate. It appeared from the evidence that Mrs. Sarah Bagby had two children, Mary and Thomas. The former was the first wife of B. F. Gilmer. After his marriage to her, Gilmer with his wife lived upon the land of Mrs. Bagby. Mrs. Bagby remained on the land until her death in 1891. After her death Mr. Gilmer and his wife continued to

live on the land until the death of Mrs. Gilmer in 1908. Mrs. Gilmer left four children, who agreed not to disturb their father's possession after their mother's death. In 1911 B. F. Gilmer contracted a second marriage with the applicant for dower, and died three years thereafter. Gilmer lived upon the land continuously from the time of his first marriage until his death, returning it for taxation in his own name. He kept the deeds to the land in a trunk where they were found after his death. Three of them were introduced in evidence, to wit: a deed to lot 95 from C. D. Price, executor of C. Price, to Jacob Strickland, duly recorded, dated December 28, 1862; a deed from Jacob C. Strickland to Jacob C. and Elisha W. Strickland, "attorneys for the heirs and legatees of Hardy Strickland, all of said county," dated January 14, 1867, conveying lot 95; and a deed dated January 14, 1867, from Jacob C. and Elisha W. Strickland, attorneys for the heirs and legatees of Hardy Strickland, deceased, to Mrs. Sarah J. Bagby. Several witnesses testified that B. F. Gilmer declared that the land belonged to his first wife, and for that reason he would not sell or encumber it. Thomas Bagby in 1915 quitclaimed by deed all of his interest in lot 95 to the administratrix of his deceased sister, Mrs. Mary Bagby Gilmer. He testified that he had sold his interest in this land in 1870 and received the purchase-price when he left the State for Texas, but had omitted to make a deed. The applicant for dower testified that a short time prior to the death of her husband he examined his land papers and exhibited to her a deed from Mrs. Bagby to himself. She was unable to tell what land was described therein, or give the names of the witnesses to the deed, or to state whether the deed was recorded. There was testimony tending to show that B. F. Gilmer sold timber growing partly on lot 95 and partly on lot 112, which latter lot was owned by him. A deed executed in 1905 by B. F. Gilmer to one Edmondson, to secure a loan and embracing lots 95 and 112, was also received in evidence.

The evidence established that Mrs. Sarah J. Bagby had prescriptive title based on more than seven years adverse possession under the deed from the Stricklands to her. The testimony of the second wife, that she saw a deed in her husband's possession from Mrs. Bagby to him, is entirely too vague and uncertain to identify any land or to authorize an inference that Mrs. Bagby had parted with

her title to this land. Nor is the circumstance that B. F. Gilmer returned the land for taxation in his name, while he was living on the land with Mrs. Bagby as a member of the family, sufficient to overcome the adverseness of her possession. It is a matter of not unusual occurrence for the male member of a household to return property belonging to the female members thereof in his own name. Upon the death of Mrs. Bagby lot 95 was inherited by her daughter and son, and the latter sold his interest to the former, who thus became vested with the whole title. Upon the first Mrs. Gilmer's death in 1908, her title descended to her husband and four children. So it thus appears that Mr. Gilmer had one undivided fifth interest in this property, which was subject to administration as a part of his estate and to be considered in the assignment of dower to his wife. Accordingly it was error for the court to direct a verdict which in effect would deny to his administrator and widow their respective shares in this undivided interest in the first Mrs. Gilmer's estate.

2. Objection was made to the reception in evidence of the deed from Price, executor, to Jacob Strickland, on the ground that the deed showed a material alteration on its face, and no preliminary proof explanatory of the alteration was submitted. The objection was based upon the Civil Code, § 5831, which declares that if the paper appears to have been materially altered (unless it is the cause of action and no plea of non est factum is filed), the party offering it in evidence must explain the alteration where the paper does not come from the custody of the opposite party. This section does not apply to registered deeds. A registered deed shall be admitted in evidence without further proof, unless the maker of the deed or one of his heirs or the opposite party in the case will file an affidavit that the deed is a forgery. Civil Code (1910), § 4210. The presumption, under this section, is that the alteration was made at or before the time of the execution of the deed, and in the absence of an affidavit of forgery such registered deed is admitted in evidence without explanation of the alteration. *Collins* v. *Boring,* 96 *Ga.* 360 (23 S. E. 401); *McConnell* v. *Slappey,* 134 *Ga.* 95 (67 S. E. 440).

3. In order for a deed executed under a power of attorney to have effect as a muniment of title, the power of attorney must be executed with the same formality which is required for a deed, and

must accompany the deed, or proof of its existence by secondary evidence in case of its loss or destruction must be submitted. But a deed executed under a power will serve as color of title, although the power of attorney be not produced. The deed from Jacob C. and Elisha W. Strickland, attorneys for the heirs and legatees of Hardy Strickland, deceased, to Mrs. Sarah J. Bagby was properly received in evidence as color of title.

4. The quitclaim deed from Thomas E. Bagby to Mrs. Ada S. Harrison, administratrix of Mary J. Gilmer, contained the following recital: "Sarah J. Bagby during her life divided her estate between her two children, to the said Thomas E. Bagby and Mary J. Gilmer, in which said division the said Mary J. Gilmer was awarded the above-described lot of land. Said Thomas E. Bagby was paid his interest in cash. This division and settlement was consummated on August 31, 1870; and the said Thomas E. Bagby never having executed a conveyance to said Mary J. Gilmer of his undivided interest in said lot of land, this deed is executed for the purpose of carrying out said settlement made on said date and vesting the paper title to said lot of land in the estate of Mary J. Gilmer." The instrument was executed and attested as a deed, and was entitled to be recorded as a deed. It was duly recorded. Such deed was admissible in evidence without proof of its execution, but the recital of facts therein is not evidence of the truth of such recital, as against one who was not a party to the instrument. *First National Bank of Gainesville* v. *Cody*, 93 *Ga.* 127 (19 S. E. 831).

5. A witness testified that during certain years one Stark was engaged in lending money on real estate, and that B. F. Gilmer applied to Stark for a loan of money, Stark demanding a lien upon lot 95, and Gilmer declining to give it for the reason that it belonged to his wife. In rebuttal and as an impeachment of this testimony, the tax digest for these years was offered in evidence to show that Stark returned no property for taxation. The tax digest was entirely irrelevant for that purpose, and was properly rejected.                    *Judgment reversed. All the Justices concur.*