TALBOTTON RAILROAD COMPANY *v.* GIBSON, and *vice versa.*

1. The petition substantially complied with the law requiring the cause of action to be be set forth " in orderly and distinct paragraphs, numbered consecutively."

2. There is no reason why a salaried officer of a corporation, elected and serving from year to year, whose yearly compensation is fixed by a resolution of its board of directors, may not, if it becomes necessary for him to sue for the recovery of an amount so due him, make out his claim against the corporation in the form of an account and bring suit upon it as such.

3. Where a corporation is sued by A. and pleads payment, evidence that the plaintiff authorized B., who was at the time its secretary and treasurer, to collect from the corporation the amount which it owed the plaintiff and to appropriate it toward the payment of an account which he owed B., and B. did so collect and appropriate the money, is admissible under such plea.

4. Where the requisite foundation is not laid for the introduction of books of account, they are inadmissible.

5. Evidence which is only indirectly relevant to the issue on trial, but which tends somewhat to illustrate it and to aid the jury in arriving at the truth of the matter, is admissible.

6. An order sustaining a motion to " nonsuit a part of a plaintiff's cause of action " is an erroneous ruling.

Argued October 20,— Decided December 17, 1898.

Complaint. Before Judge Butt. Talbot superior court. March term 1898.

The petition of Gibson against the Talbotton Railroad Company, filed February 18, 1895, was demurred to on the following grounds: (1) The petition and allegations are not paragraphed and numbered as required by the statute. (2) The cause of action set out is for salary upon contract, and not upon account. (3) The cause of action alleged, if any, would be upon contract, and not subject-matter of account. (4) The allegations show that there was no account or subject-matter of account. (5) The petition does not show any cause of action. The demurrer was overruled. The petition is as follows:

"Par. 1. The petition of Thomas N. Gibson respectfully showeth, that the Talbotton Railroad Company, a corporation incorporated under the laws of Georgia, of said county, is indebted to your petitioner in the sum of three thousand, two hundred dollars and . . cents, besides interest, on an account as will fully appear by reference to a bill of particulars hereunto annexed. 2. Which account the said Talbotton Railroad Company refused to pay. 3. Wherefore your petitioner prays process may issue requiring the said Talbotton Railroad Company to be and appear at the next superior court of said county to answer your petitioner's complaint." (Signed by plaintiff's attorneys.)

"Par. 4th. The Talbotton Railroad Company, to Thomas N. Gibson, Dr.

| 1887. | To salary as president of said company for the year 1887, | $300.00 |
|---|---|---|
| 1888. | " " " " " " " " " " " | 300.00 |
| 1889. | " " " " " " " " " " " | 500.00 |
| 1890. | " " " " " " " " " " " | 600.00 |
| 1891. | " " " " " " " " " " " | 600.00 |
| 1892. | " " " " " " " " " " " | 500.00 |
| 1893. | " " " " " " " " " " " | 200.00 |
| 1894. | " " " " " " " " " " " | 200.00" |

The defendant pleaded payment, and that the items charged for the years 1887, 1888, 1889, 1890, and 1891 were barred by the statute of limitations. The declaration was subsequently amended by striking from it the items of salary for the years 1892, 1893, and 1894. At the trial the plaintiff introduced in

evidence the minutes of the board of directors of the defendant, from which it appeared that on May 6, 1891, the salary of the president was fixed at $600 a year. The plaintiff testified: He was president of the Talbotton Railroad Company for the years beginning in May, 1887, and ending May 1, 1892. He received no part of his salary for any of these years. He had never called upon the company for his salary, but had called upon S. W. Thornton, the superintendent, secretary and treasurer, frequently for his salary, while witness was president of the road and since, and Thornton always put him off by saying that the company was hard pressed for the money. Thornton had, during all of those years, full control and management of the finances of the road. He and his family have traded with S. W. Thornton, and an account of S. W. Thornton against him was brought to him by W. W. Thornton, son of S. W. Thornton, and witness did not dispute it. Thornton's account against him was over $900, and Thornton was indebted to him for stable account and store rent more than he was to Thornton at the time. There was no credit of railroad salary on the account, and no item on it that witness could name that he did not get. He could not say whether the account was correct or not.—The court, on motion, granted a nonsuit as to the items of salary for the years 1887, 1888, 1889, and 1890, upon the ground that it appeared that these items were barred by the statute of limitations.

W. J. Thornton, son of S. W. Thornton, testified: S. W. Thornton was the general manager of the Talbotton Railroad Company. He became connected with them in 1893. Before that time J. H. Dennis held the position now held by witness. A book identified as "the pay-roll" was kept by Dennis while he held the position, and witness kept it since. He identifies a book as the monthly report, showing the dealings of the railroad company from May, 1891, until May, 1892. Gibson's salary was $600 per year, $50 per month, as president of the company. For the year 1892, Gibson was paid on his salary for the year 1891, $50 in June, and the same sum each of the succeeding months down to and inclusive of May. The road is not indebted to him for salary or for anything else. The hand-

writing of the monthly report is the handwriting of Dennis, who was the agent of the road at that time. Witness has compared the book with the report, and they correspond. Both books are in the handwriting of Dennis. The salary of Gibson from May, 1891, to May, 1892 was paid by the Talbotton Railroad Company to S. W. Thornton, who was at that time the superintendent of the company. Witness was keeping books for S. W. Thornton in May, 1891. A book identified as the time-book shows the time; the voucher is the payment; witness does not know that it could be called a receipt. An account presented to witness was a statement of Gibson's account with S. W. Thornton. Gibson had a credit upon it of $600 as the president of the Talbotton Railroad Company from May, 1891, to May, 1892. The railroad company paid that sum to S. W. Thornton, and it was credited upon Gibson's account, as directed by Gibson. Witness handed Gibson his account with Thornton, and Gibson did not object to it, and did not say that it was incorrect. The account presented to Gibson was not credited with $600.

The defendant offered in evidence the original books of entry of the Talbotton Railroad Company, showing that the salary of the president had been paid. Plaintiff objected on the ground that the vouchers were the highest and best evidence. The court sustained the objection. S. W. Thornton testified: He was secretary and treasurer of the Talbotton Railroad Company, and in 1891 paid the salary of Gibson as president of the road. He paid Gibson's salary from May, 1891, to May, 1892, as well as all other salaries that were due him. Gibson ran an account at his store, and directed him to collect his salary from the Talbotton Railroad Company, and to credit it to Gibson's account. This was a private understanding between them. Acting under this agreement and instruction, witness collected Gibson's salary from the Talbotton Railroad Company as president, and gave him credit for it on his account, and the Talbotton Railroad Company does not owe Gibson for salary or for anything else. Witness had given Gibson credit for the rent of the store, and had paid all livery-stable bills that he had against him, and had credited upon his account

his salary collected from the Talbotton Railroad Company, which left Gibson owing witness several hundred dollars as balance on his account. Witness had sent Gibson's account to him, and he did not dispute it. Witness did the paying of railroad employees. He never took receipts. W. J. Thornton gave them checks, and witness paid them, All employees were paid by checks. Gibson's salary was not paid by a check; that went on his account. Witness had a contract with him at the time he was president and witness was secretary and treasurer. Witness agreed to let Gibson have goods, and when his salary was paid it went into the hands of witness as treasurer, and witness credited Gibson's account with witness with it, as was agreed between them. Witness credited him on "this statement," which was made out from the books of witness. Witness could not tell when it was made out; he made credits of Gibson's salary from memory. An account in favor of S. W. Thornton against T. N. Gibson for $969.89, less credit $25.23, was shown to the witness, and he testified that his son presented this account; he did not present it himself.

Defendant then introduced vouchers showing that the plaintiff had been paid $50 per month from May 1, 1891, to May 1, 1892. T. M. Beall testified: He was cashier of the Talbotton Bank in 1891, and paid certain checks signed "Thornton Mdse. and Drug Co.," payable to Gibson. He paid them without indorsement, and they were therefore paid to Gibson in person. Defendant then introduced the checks identified by the witness.

Defendant offered in evidence certain drafts of various dates in 1891, on S. W. Thornton, signed by Gibson. Plaintiff objected on the ground that the drafts showed that they were private dealings between Gibson and Thornton, and were irrelevant. The court sustained the objection, and on motion ruled out all of the testimony introduced by the defendant, and directed a verdict for the plaintiff for $600, with interest from May, 1892. Defendant brought its bill of exceptions to each of the rulings stated, other than that as to nonsuit, to which plaintiff excepted by cross-bill.

*J. H. Worrill* and *C. J. Thornton*, for the railroad company..
*A. J. Perryman, J. J. Bull* and *J. H. Martin*, contra.

FISH, J. 1, 2. There was no merit in the demurrer to the plaintiff's petition. The petition substantially complied with the law requiring the cause of action to be set forth "in orderly and distinct paragraphs, numbered consecutively." *Wingate & Mell* v. *Atlanta National Bank*, 95 *Ga.* 1. It was not demurrable because the plaintiff declared upon an account and not upon a special contract. The bill of particulars attached to the petition showed that the account sued on was for several years' salary due by the defendant corporation to the plaintiff, for his services as its president, the years in which the services were rendered and the respective amounts due for each year being specified. We know of no reason why a salaried officer of a corporation, elected and serving from year to year, whose compensation for each year is fixed by resolution of its board of directors, may not, if it becomes necessary for him to sue for the recovery of an amount so due him, make out his claim against the corporation in the form of an account and bring suit upon it as such. It has been repeatedly held by this court that, under the old statutory form which was prescribed by the act of 1847 for "an action upon an account," the plaintiff could recover upon proof of a special agreement to pay the amount charged in the account. *Johnson* v. *Quinn*, 52 *Ga.* 485, s. c. 51 *Ga.* 289; *Roberts & Hughey* v. *Harris*, 32 *Ga.* 542; *Schmidt* v. *Wambacker & Weil*, 62 *Ga.* 321. See *Bright* v. *Central R. R.*, 88 *Ga.* 535; *Kirkland* v. *Dryfus*, 103 *Ga.* 128. As the act of 1847 did not undertake to say in what cases "an action upon an account" could be brought, but simply provided a form which might be used for such an action, these decisions clearly show that an action upon an account may be brought for goods sold or services rendered, whether there is a special agreement or not to pay a specified sum for such goods or services.

3. One ground of error alleged in the main bill of exceptions is, that the court below sustained the motion of the plaintiff "to rule out all of the testimony introduced by the defendant, and to direct a verdict for the plaintiff for $600.00 with interest from the 1st day of May, 1892." The record does not disclose the grounds upon which this motion was predicated. Being left to mere conjecture to ascertain what these grounds were,

we are at a loss to know upon what theory the court sustained this motion.    S. W. Thornton, a witness for the defendant, testified, "that he was secretary and treasurer of the Talbotton Railroad Co., that in 1891 he paid the salary of Mr. Gibson as president of the road, and that he paid the salary of Mr. Gibson from May, 1891, to May, 1892, as well as all other salaries that were due him, that he was carrying on a mercantile business in Talbotton, and that Mr. Gibson was elected president of the Talbotton Railroad Co., and that he was elected secretary and treasurer of the said company, and that Mr. Gibson ran an account at his store, and agreed and directed him to collect his salary from the Talbotton Railroad Co., and to credit it to his, Mr. Gibson's account.    And, acting under this agreement and instruction from Mr. Gibson, he collected Mr. Gibson's salary from the Talbotton Railroad Co. as president, and gave him credit upon his account for it."    This testimony was certainly relevant under the defendant's plea of payment, which, though defective, was not demurred to; and the court should not have ruled it out.    For if the plaintiff did authorize Thornton to collect from the Talbotton Railroad Co. the amount which it was due the plaintiff on account of his salary, and to credit it upon an account held against him by Thornton, and Thornton did so, then the indebtedness of the railroad company to the plaintiff was extinguished.    This testimony unimpeached and uncontradicted would have sustained the plea of payment.    There was a direct conflict, on this point, between the evidence of S. W. Thornton and that of Gibson, the plaintiff, but Thornton's testimony being admissible, the issue thus raised should have been determined by a jury.    Upon proper objection being made thereto, so much of the testimony of the defendant's witness, W. J. Thornton, with reference to the payment by the railroad company of the plaintiff's salary, as appears to be based not on his own personal knowledge, but on his conclusions from an inspection of entries on the books of the company made by a former bookkeeper thereof, whom the witness succeeded, would have been inadmissible.    If the motion to rule out the defendant's testimony, so far as the evidence of this witness was concerned, was based upon the fact that he appeared to be giving

simply his conclusions arrived at by inspecting these entries on the books, the court would not have erred in excluding from the jury this part of his testimony.

4. There was no error in ruling out "the books of original entry of the Talbotton Railroad Company," which were offered by the defendant for the purpose of "showing that the salary of the plaintiff had been paid." Irrespective of the ground of the objection which was made, it is clear that these books were not admissible, because no effort whatever had been made, by preliminary proof, to lay the foundation for their introduction. The Civil Code clearly prescribes the conditions under which books of account are admissible as evidence, and without a substantial compliance with these conditions they are not competent testimony.

5. While ordinarily the two drafts payable to Ragland, and the two orders payable, respectively, to Mamie Gibson and Smith, all of which appeared to have been drawn by the plaintiff on S. W. Thornton, would have been entirely irrelevant in a suit of this kind, we think, in view of the direct conflict in the testimony of S. W. Thornton and that of Gibson, they were admissible. As Thornton testified that Gibson owed him and authorized him to collect his, Gibson's, salary from the defendant corporation and apply it as a credit on this indebtedness, and Gibson testified that he never gave Thornton any such authority and that Thornton was indebted to him more than he was to Thornton, we think the true state of the private accounts between them, at the time that Thornton claimed that he was authorized to collect Gibson's salary, was a circumstance which the jury might properly consider in weighing the testimony of these two witnesses, and therefore any evidence which tended to show what it was, at that time, was admissible. Evidence which is only indirectly relevant to the issue on trial, but which tends somewhat to illustrate it and to aid the jury in arriving at the truth of the matter, should be admitted. *Walker & Chapman* v. *Mitchell*, 41 *Ga.* 102. The rule in this State is to admit evidence which is of doubtful relevancy. *Augusta Factory* v. *Barnes*, 72 *Ga.* 218; *Dalton* v. *Drake*, 75 *Ga.* 115; *S., F. & W. Ry. Co.* v. *Flannagan*, 82 *Ga.* 580.

6. In the cross-bill of exceptions it is stated, that, at the close of the plaintiff's testimony, "the defendant moved that the court grant a nonsuit, so far as the items of account for the years 1887 to May, 1891, were concerned, upon the ground that these items were barred by the statute of limitations"; and that the court granted the motion. Error is assigned upon this ruling. We know of no such thing as a partial nonsuit. The effect of a nonsuit is to abruptly terminate the whole case; it puts the entire case out of court, leaving the plaintiff at liberty to bring it again. To "nonsuit" simply a part of the plaintiff's cause of action would be to divide the case into two parts, dismissing one portion, which the plaintiff could bring again, and allowing the remainder to be tried and a verdict and judgment to be rendered therein. We are aware of no precedent for such a practice as this. As said by this court in Swain v. Macon Fire Ins. Co., 102 Ga. 96, "the order passed in the case at bar should be treated, not as the granting of a nonsuit, but merely as an erroneous ruling." Although this ruling of the court was, as a matter of practice, erroneous, it clearly appeared from the evidence that all the items of the account affected by it were barred by the statute of limitations, so that if the whole case had been submitted to a jury, under proper instructions relative to the plea of the statute, a verdict which, in effect, found against all of them would have been demanded, we should not feel disposed to reverse the court upon this point, for the plaintiff would not have been hurt by the error. But, according to the cross-bill of exceptions, the plaintiff introduced the minutes of the board of directors of the defendant corporation, which showed that, at the May meeting of the company in each of the years 1887, 1888, 1889, 1890, and 1891 he was elected president and his salary fixed at $300 per year, except as to the last year, when his salary was fixed at $600. The plaintiff himself testified, "that he was the president of said road for the years beginning in May, 1887, and ending 1st [of] May, 1892," and "that he had received no part of his salary for any of said years." The evidence as to when each year's term of service began and ended appears to have been admitted without objection. As the suit was filed Feb. 18,

1895, if the plaintiff was employed by the defendant, as its president, by the year, it is apparent, under the testimony submitted, that his salary for the year beginning May 1st, 1890, and ending May 1st, 1891, was not barred by the statute of limitations. We therefore sustain this exception. As we have already seen, this is a case which, under the pleadings and the evidence, should have been submitted to a jury for determination; and, as the statute of limitations is pleaded, at the next trial the court can submit this question to a jury, under proper instructions.

*Judgment reversed on both bills of exceptions. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*