## 2400.    CARROLL *v.* ATLANTA PAPER COMPANY.

The court did not err in granting a nonsuit.

Action for damages; from city court of Atlanta—Judge Reid. November 17, 1909.

Argued March 24,—Decided April 6, 1910.

*J. Caleb Clarke, Westmoreland Brothers,* for plaintiff.

*Slaton & Phillips,* for defendant.

POWELL, J.    Miss Carroll, a young lady of seventeen, while employed in the printing establishment of the defendant company, suffered a severe injury to her right foot; and, to recover damages therefor, this suit was brought.    At the conclusion of the testimony offered in her behalf, a nonsuit was awarded, and to this judgment she brings error.

It appears that she had been working in the defendant's establishment for some time; but that she had been working only a few

hours at the press by which she was injured.   She went to work at
the beginning of the day and was hurt in the middle of the after-
noon.   She was feeding a cylinder press, so designed as to feed from
the side.   The machine operates thus: the operator, standing on a
slightly elevated platform or sitting on some sort of a seat upon
this platform, beside the press, feeds the material to be printed, off
the feed-board at the top of the press, on to a revolving cylinder,
which grips it and, with its revolution, carries it around and brings
it into contact with the type placed on the bed on the lower portion
of the press—this bed being so designed that it rapidly moves
back and forth in a horizontal plane, from front to rear, by an ad-
justment of cogs and teeth.   As the operator stands or sits facing
the machine, this press-bed and the cogs are in front of her and
somewhat under her; though when she is engaged in feeding the
press, her head and consequently her eyes are so elevated that the
feed-board shuts off her view of this mechanism in the lower part
of the press.   On the day of the injury the plaintiff was sitting on
a box—a plain, wooden box, three feet high, two feet broad,
two feet wide, with a strip nailed across the open side for a
foot rest.   These boxes, which the defendant company furnished
the operators or allowed them to use as seats when engaged
in feeding the presses, were simply such ordinary goods boxes
as are commonly to be seen almost anywhere.   While Miss Carroll
was thus sitting on the box, feeding the press, the front of the box
gave way, and she caught the feed-board with her hands, thus sup-
porting her body, but her foot was thrown into the cogs and
mashed.   She was unable to explain how or why the box gave way.
She had gotten off and on it several times that day; she had been
sitting on it for several hours, and, so far as she had discovered,
there was nothing wrong with it.   Just how she was sitting, whether
upright or leaning forward, at the moment of the occurrence, she
was not able to say.   What defect, if any, existed in the box is not
disclosed.   The above states the substance of all the evidence on
that subject.

One of the allegations of negligence is based on the fact that
the press had no guard or boxing around or about the cogs and
teeth.   There was much evidence pro and con as to whether it was
usual to have guards at such places—enough evidence, if the case
had turned on this issue, to require its submission to the jury.   But

from all the testimony it is plain that this deficiency, if it was a negligent delinquency, was so obvious as to be seen by superficial and casual observation; so much so that Miss Carroll, who had been working nearby the machine for several months, must, as a matter of law, be held to have assumed it as one of the risks of the employment.

The other allegation is based on the unsafety of the box furnished her by the defendant company as a seat. As the plaintiff produced no direct evidence of any defect in the construction of the box, or of any failure of the defendant to inspect it for indicia of danger, and as she relies solely upon the fact of its giving way, to prove the employer's negligence in this respect, she must and does rest her case, as to this feature, upon what her able counsel calls the doctrine of res ipsa loquitur, but which we prefer to call circumstantial evidence. As she was the plaintiff, and as she was unaided in her proof by any statutory presumption, she had the burden of proving the negligence of the master; and as proof by circumstantial evidence works according to the process of exclusion, she had the burden of excluding as being unreasonable, or as being not so reasonable as the theory of the defendant's negligence, the theories of accident and of the event's having occurred through the operation of causes as to which she had assumed the risk. Cf. *Ga. Ry. & El. Co.* v. *Harris,* 1 *Ga. App.* 714 (57 S. E. 1076). It is impossible to say that the mere fact that the box gave way, under the circumstances shown, establishes these essential elements of the plaintiff's case. See *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (47 S. E. 329).

Indeed, it appears to be a case where the plaintiff, without fault, without negligence, without having done anything which any ordinarily prudent person would not have done, without voluntarily exposing herself to any reckless hazard, has been hurt while carrying on her employer's business; and yet it does not appear that the employer has done her any wrong, in a legal sense, or that it has incurred any liability to her, so far as our law recognizes. This young working woman, engaged honestly in earning a livelihood, faultless as she was in the transaction that caused her hurt, must, under our law, go forth without right or remedy as to pension or compensation, and join the ever-swelling army of industrial cripples. Isn't it time to change the law? Doesn't public expediency

dictate that in such cases the loss should fall upon the business? Shouldn't every industrial enterprise shoulder, as one of its burdens, the liability of compensating and taking care of those who, without fault, have been injured in carrying on that enterprise, even though the employer can not be directly charged with negligence? Our law says no; and we have no choice but to obey the law. But common sense and the dictates of public good join in crying aloud that the law should be changed. The court, obeying the law as it is, granted the nonsuit. It is likewise our duty to affirm the judgment.                    *Judgment affirmed.*