12257.  NEARY *v.* GEORGIA PUBLIC SERVICE CO.

The allegations of the petition set forth a cause of action, and the court erred in sustaining the demurrer.

DECIDED JUNE 17, 1921.

Action for damages; from Crisp superior court — Judge Gower. January 6, 1921.

Application for certiorari was denied by the Supreme Court.

The plaintiff's petition alleges, in substance, that her husband was employed by the defendant, an electric service company, as a lineman, and while he was at work fixing the wires of the company, on the top of an electric-light pole, he came in contact with one of the wires, which was heavily charged with electricity, and received a shock which instantaneously caused his death; and that he was wholly free from fault or negligence contributing to the injury. She alleges that the defendant company was guilty of negligence in failing to provide him a safe place to work, in failing to warn him of the dangers surrounding his place of work, and in not providing him with proper and competent fellow employees; in failing to give him any warning that a heavy voltage of electricity was going to be conducted through the wires while he was working on them, that he had a right to expect such warning from the company, as it was the custom of the company to cut off the current from the wires when they were to be worked

on, and the superintendent directed him to perform the work, and assured him that it was safe to do so at that time; that the company sent him to work without proper tools to work with and without furnishing him with rubber gloves to protect him from the current of electricity passing through the wires; that the company was negligent in not cutting off the electric current from the wires before requiring him to do the work, and that he had no knowledge or notice that there was any danger attendant upon the work to be performed at that time and place, and had no means of knowing that the work was of a dangerous character, and could not by ordinary care have discovered the dangerous nature of the work or prevented the consequences to himself of the defendant's negligence.

*John R. Cooper, W. O. Cooper Jr., Joseph H. Hall,* for plaintiff.

*Harris, Harris & Wilman, F. G. Boatright,* for defendant.

Hill, J. (After stating the foregoing facts.)  There being no statutory presumption in aid of the plaintiff's case, the burden was upon her of proving the negligence of the master in respect to the matters of negligence alleged in her petition; and the allegations of the petition should be sufficient to show that the defendant was guilty of negligence if the facts were proved as alleged, and also sufficient to exclude any reasonable hypothesis that his death was caused by reason of accident, his own negligence, or by one of the risks which he had assumed under his contract of employment. *Carroll v. Atlanta Paper Co.,* 7 *Ga. App.* 584 (67 S. E. 680). It is insisted that the allegations of the petition did not measure up to this standard.  First, it is said that there is no allegation in the petition as to how the employee came to his death, and several hypotheses entirely consistent with defendant's innocence are pointed out, either one of which may have been the cause of the injury. It is expressly alleged that the decedent came to his death by receiving a shock from a heavily charged electric-wire which he was working on at the time.  How he came in contact with it is not alleged.  While the general rule as to the burden of proof of negligence applies to actions against electric companies for personal injuries, yet such actions offer an opportunity for the application of the well-established doctrine of res ipsa loquitur.  It is certainly inferable from the fact that the death

was caused by the electric shock that the wire containing the current of electricity was not in safe condition, and this would be sufficient to raise a prima facie presumption that the electrical company having such an appliance in charge was in some way negligent in the performance of its duty. As stated in the discussion of this subject in 9 R. C. L. 1221-3, " The exceedingly dangerous character of live electric wires lends force to the strict application of this rule of law to accidents occurring through contact with them under such circumstances, and, unless the rule of res ipsa loquitur is applied, it is evident in a large number of cases liability for the resulting injury will be escaped. It is within the power of these companies at all times to show whether they have exercised due care in the erection and subsequent supervision and maintenance of their wires and appliances, while to prove an actionable lack in these things would be, in many cases, practically beyond the reach of the person injured. The defendant company may rebut the plaintiff's prima facie case thus made in any way showing the absence of negligence on its part."

Among the acts of negligent omission charged against the defendant in the present case is its failure to perform its duty of giving to its employee a safe place in which to perform his work, and in this connection it is also alleged that there was a custom of the defendant company to cut off the current of electricity from its wires when its employees were engaged actually in working on them. It is not specifically alleged that the plaintiff, in going up on the pole for the purpose of repairing the wire, relied upon this custom, but the only significant inference from the allegation of the existence of the custom is the one that he did rely upon the custom. The inference is greatly strengthened by the additional allegation that, before going up to do the work, he was assured by the superintendent who had charge of the work that it was safe for him to do the work " then and there," and while there is no specific allegation that the decedent relied upon this statement and assurance of the superintendent, yet this is also the only fair, reasonable inference from the allegation that the statement or assurance was given. If it was the custom of the company to cut off the current when its linemen were actually engaged in working on the wires, the custom must have been known to the lineman, and he must have relied upon the custom

as a protection while engaged in his work. And if the assurance was made to him by the superintendent, as is alleged, he certainly had the right to rely upon that assurance as a justification for believing that the custom was then in force. The court could not know, as a matter of law, whether the defendant had such a custom or was required, in the exercise of ordinary care, to have such a custom in the conduct of its business, but the court would take judicial cognizance of the scientific fact that the only acts which could have been performed by the defendant, to assure the safety of its employees while working upon the wires, was either to have the wires insulated, or have the current cut off at the time the work was being performed. Whether the defendant, in the exercise of ordinary care, was chargeable with the duty of cutting off the current at that time was a fact which could not be determined as a matter of law, but was referable to a jury for decision as a matter of fact. If, in other words, the evidence should show that such a custom as above indicated did actually exist, the employee had a right to rely upon it, and the burden would be upon the defendant to show either that the custom did not exist, or for some legal and satisfactory reason was not in force at the time of the killing of the employee. A lineman is of necessity exposed to unusual dangers. It is the duty of the employer to see that the place where he is to perform his work is, in view of the situation, reasonably safe; and while his place of work is one of unusual danger, he has a right to assume that it is as safe as ordinary care and diligence can make it, and that the negligence of the employer is not added to the dangers he is obliged to incur in the performance of his duty. In the case of *Columbus Power Co.* v. *Puckett,* 24 *Ga. App.* 390 (100 S. E. 800), Presiding Judge Jenkins, speaking for the court, as illustrative of the present point, said that an electric company " is bound to exercise ordinary diligence in the erection and maintenance of its poles and wires, so as to permit an employee . . who ascends a pole of his company in the discharge of his regular duties, to perform his work in reasonable safety." If, in the exercise of such care, it was the duty of the company, while the lineman was working on the wire, to cut off the current therefrom, and in recognition of this duty a custom had been adopted to that effect, the plaintiff's husband had a right to rely upon it,

16

and this was an issue of fact to be determined by the jury, and could not have been decided as a question of law by the court on demurrer. *Columbus Power Co.* v. *Puckett,* supra.

Another allegation of negligence set out in the petition is that it was the duty of the company to furnish the employee with a safe place in which to perform his work, and that this duty was not performed if, with knowledge that the employee was working on the wires at the place of contact with the pole, the current was still on with dangerous force, that it should have been cut off irrespective of any custom, in the discharge of ordinary care imposed upon the defendant for the protection of the lineman. Whether this duty of cutting off the current was on the defendant is a matter to be determined by the evidence. It cannot be determined as a matter of law. Of course if the defendant could not cut off the current without detriment to its entire service, it would not be called upon to do so, but if the current could have been cut off without detriment to its service, it was a question to be determined by the jury, under the facts of the case, whether it should have been done as a means of protection. In the case of Paducah Ry. & Light Co. v. Bell's Admr., 27 Ky. Law Rep. 428 (85 S. W. 216), it was held, in a case where the lineman was shocked from contact with a defectively insulated wire, that " the employer was liable upon the ground that he had failed to furnish the employee with a safe place in which to work." No allegation appears in the petition as to the failure to have the wires insulated properly as being a negligent act on the part of the defendant, the definite allegation being that the company was negligent in sending the decedent to work on top of the electric pole on electric wires heavily charged with a high voltage of electricity, without first cutting off the current of electricity in the wires. Without undertaking to hold, as a matter of law, that it is the duty of the electric company, in the exercise of ordinary care, to cut off the current while its employees are actually at work on the wires in the absence of complete insulation, if, as a matter of fact, such a custom existed, it was a recognition by the company that such an act was necessary as a protective measure; and we lay down the proposition, which we think indisputable, that those who employ in their business the most dangerous, subtle, and powerful force known to human agency are bound to exercise such means to prevent injury to their

employees as the dangerous character of the employment would reasonably seem to require.

It is insisted by learned counsel for the defendant in error that the risk of coming in contact with the live wire was one of the risks assumed by the employee. It is well settled in the doctrine of the law of master and servant that one who undertakes hazardous employment assumes the risks ordinarily incident thereto; and this modifies the master's obligation to provide his servant with a safe place to work when the latter contracts to serve under conditions he knows to be dangerous. This is the rule laid down by our Civil Code (1910), § 3131. What risks are deemed ordinary are usually questions of fact to be determined in the particular case. As a general proposition it may be stated that every risk which is not caused by a negligent act or omission on the master's part is assumed by the servant. 3 Labatt's Master & Servant, (2d ed.), 3110. " A servant by entering into his master's service assumed all the risks of that service which the master cannot control." Gilman v. Eastern R. Corp., 10 Allen, 233 (87 Am. D. 635) ; Caldwell v. Brown, 53 Pa. 453. " Ordinary risks are such as remain after the employer has used all reasonable means to prevent them." Seley v. So. Pac. Co., 6 Utah, 319 (23 Pac. 751). " The risks which the servant assumes are ' necessary risks, such as attach or belong to the work, and which even the ordinary care of the master cannot provide against.' " Halliburton v. Wabash R. Co., 58 Mo. App. 27. It follows from these decisions, which we think are sound, that if the danger to the lineman engaged in his work in the present case was one which the master could have prevented by the exercise of ordinary care, it was not a risk which the employee assumed. And especially would this apply in the present case, in view of the allegation of the custom of the company as to cutting off the current and the assurance of the superintendent that the place was one in which it was safe to work; and in our opinion this question should have been referred to the decision of a jury, and could not have been properly determined as a question of law. In order, therefore, to allow the plaintiff an opportunity to prove her allegations on the questions treated in this opinion, the judgment of the trial court in sustaining the general demurrer and dismissing the petition is reversed. The allegations of negligence not specifically considered

are without merit, and the trial should be confined to the allegations which we hold raise issues of fact on the vital question in the case, as to whether or not the master was in the exercise of ordinary care, and whether the master violated, in the matters herein treated, the obligation to use all reasonable means to protect the employee in the discharge of his duty, in so far as it is alleged that the master's omission was a failure to exercise such duty.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*