37244, 37245. READY-MIX CONCRETE COMPANY *v.* RAPE; and *vice versa.*

504

Decided October 16, 1958—Rehearing denied
November 4, 1958.

508

*Matthews, Maddox, Walton & Smith, John W. Maddox,* for plaintiff in error.

*Dudley B. Magruder, Jr., Wright, Rogers, Magruder & Hoyt,* contra.

QUILLIAN, Judge. ■ The defendant contends that the petition

failed to set forth a cause of action because an action for exemplary damages cannot be combined in the same count of a petition. With this contention we do not agree. Wrongful damage to real property caused by a concussion from blasting with dynamite is direct, and constitutes a trespass to realty. *Brooks v. Ready Mix Concrete Co.*, 94 *Ga. App.* 791 (96 S. E. 2d 213). The petition in the present case is very similar to that in the *Brooks* case except as to the allegations that the defendant "wilfully, wantonly, recklessly, and intentionally" caused the explosions which resulted in damage to the plaintiff's house. In *Savannah Electric &c. Co.* v. *Horton*, 44 *Ga. App.* 578 (2) (162 S. E. 299) the rule is well stated: "In every tort there may be aggravating circumstances, which may exist 'in the act', as well as in the intention, and in that event the jury may award additional or exemplary damages. Civil Code (1910), § 4503. If a person commits a trespass with knowledge that he is acting without right, exemplary or punitive damages may be awarded. Watkins *v.* Gale, 13 Ill. 152; Mississippi River Logging Co. *v.* Page, 68 Minn. 269 (71 N. W. 4); St. Clair *v.* Cash Gold Mining Co., 9 Colo. App. 235 (47 Pac. 466). While it may be true that the burden is upon the plaintiff to prove that the trespass was wilful (*Milltown Lumber Co.* v. *Carter*, 5 *Ga. App.* 344 (3), 63 S. E. 270), evidence that the trespass was committed upon property which the defendant knew belonged to another would be sufficient for this purpose. Cf. *City & Suburban Railway* v. *Brauss*, 70 *Ga.* 368 (2); *Georgia Railroad* v. *Homer*, 73 *Ga.* 251 (2).

"(a) The jury were authorized to find that the damage to the property amounted to as much as $200, and the verdict for $250 was not contrary to law nor to the evidence because it must have included at least $50 as punitive damages; nor was the charge upon the subject of punitive damages erroneous as being unwarranted by the evidence." See also 52 Am. Jur. 878, § 57.

Under authority of the above cited cases the trial judge did not err in overruling the general demurrer to the petition.

The defendant demurred specially to paragraph 19-A as amended as alleging conclusions not supported by allegations of fact: Paragraph 19-A alleged: "Several residents of the Sum-

merville Park Subdivision, to wit: The plaintiff, Mr. Matthew H. Wagner, Mrs. Elenor Glover and other persons whose names are unknown to the plaintiff notified the officers and agents of the defendant, specifically A. W. Ledbetter, president, and Alfred Carter, secretary and treasurer, that the explosions were causing extensive damage to their respective homes and requested that the explosions be controlled, limited or reduced so that additional damage would not occur. The defendant wilfully, wantonly, recklessly, and intentionally not only failed to halt, limit or restrict its operations, but continued to cause severe explosions resulting in the damage to the plaintiff as aforesaid." Under the holding in division 1 of this opinion the above quoted allegations of fact if proved would be sufficient to make a question for the jury's determination as to whether the plaintiff was entitled to exemplary damages. The trial judge did not err in overruling the above special demurrer.

■ There were other special demurrers which were either cured by amendment or are without merit and we do not feel a discussion of them is necessary.

■ The only general ground of the motion for new trial insisted on is that the verdict was not supported by the evidence. The defendant, in an interesting and thorough brief, splendidly presents various reasons why, as it contends, the evidence adduced upon the trial was insufficient to prove the plaintiff's case. · The defendant asserts that the evidence introduced by the plaintiff was circumstantial, and was too vague, inconclusive and speculative to establish that the explosions ignited by the defendant damaged his house. The defendant cites cases in which circumstantial evidence was too indefinite and conjectural to prove the plaintiff's right to recover. We recognize the rule stated in *Cheeves* v. *Danielly*, 80 *Ga.* 114, 116 (4 S. E. 902), "If the act complained of, though it might in some degree contribute to the injury, is so small or of such character as would not itself produce the injury, and is of itself an innocent act, and there are other and contingent circumstances which greatly preponderate in producing the injury, then the damages cannot be recovered."

But we think more applicable to factual situations of this case is the rule, "If the evidence for the plaintiff, circumstantial

though it be, tends reasonably to establish the theory of the case made by the petition, and preponderates to that theory rather than to any other reasonable hypothesis, it is error to grant a nonsuit." *Callaway* v. *Hall*, 58 *Ga. App.* 795 (199 S. E. 899).

Here the witness testified to a succession of related events and circumstances from which it could be fairly inferred that the damage to the plaintiff's house was caused by the explosions set off by the defendant, rather than from some other cause. For analysis of the evidence on this point refer to the discussion contained in division 9 of this opinion.

It must be noted that in a civil case circumstantial evidence will support a verdict if it preponderates to the hypothesis upon which the plaintiff's right of recovery is based. *Radcliffe* v. *Maddox*, 45 *Ga. App.* 676, 682 (165 S. E. 841); *Georgia Ry. &c. Co.* v. *Harris*, 1 *Ga. App.* 714 (57 S. E. 1076).

The defendant earnestly urges that the evidence was not sufficient to establish the plaintiff's cause, because it consisted of mere inferences based on inferences. The ancient rule is stated in *Georgia Ry. &c. Co.* v. *Harris*, supra, headnote 3, "Ordinarily it is a rule of circumstantial proof that the facts from which the main fact is to be inferred must be proved by direct evidence. An inference resting only upon an inference is not permissible."

In *Lee* v. *State*, 8 *Ga. App.* 413, 419 (69 S. E. 310) the author of *Georgia Ry. &c. Co.* v. *Harris*, supra, Judge Powell wrote: "The language related to the peculiar facts of the case then before the court and was an application of the old doctrine of the law of circumstantial evidence (a doctrine, however, of limited applicability, and, indeed, of doubtful soundness, as it is generally stated), that 'an inference can not be supported by an inference' (cf. *Ga. Ry. & Elec. Co.* v. *Harris*, 1 *Ga. App.* 714, 719, 57 S. E. 1076, 1078), rather than the announcement of a general rule on the subject now under discussion."

For in the instant case there is direct evidence of basic facts and proof of circumstances sufficient to establish the hypothesis claimed. Facts may be ascertained by the witness through any of his senses. Texas & Naro Co. *v.* Warden, 78 S. W. 2d 164. Here there was direct evidence as to the relative location of the plaintiff's house and the defendant's quarry where dynamite

charges were exploded, and also direct evidence that the sound of the explosions came from the quarry, and that upon the explosions being heard violent vibrations were felt near and at the home of plaintiff. Moreover, if the evidence be considered entirely circumstantial, the proof of the circumstances was so cognizant and conclusive that a chain of evidence was wrought, its several links so strong that the existence of each could be fairly inferred from the proof of the others.

The defendant invokes the rule stated in *Frazier* v. *Georgia R. & Bkg. Co.*, 108 *Ga.* 807 (1) (33 S. E. 996), "When a plaintiff's right to recover depended upon the establishment of a particular fact, and the only proof offered for this purpose was circumstantial evidence from which the existence of such fact might be inferred, but which did not demand a finding to that effect, a recovery by the plaintiff was not lawful, when by the positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed." The rule is not applicable to the facts of this case. The plaintiff relied on the testimony of nonexpert witnesses who related facts from which it could be fairly inferred that the blast ignited by the defendant at its quarry damaged the plaintiff's home. The defendant submitted the evidence of expert witnesses who testified that the blast could not have damaged the house.

In *Fisher Motor Car Co.* v. *Seymour & Allen*, 9 *Ga. App.* 465 (3) (71 S. E. 764) it is held: "The comparative value of opinion evidence of expert and nonexpert witnesses is for the jury."

The defendant asserts that the evidence was insufficient to show the amount of damage to the plaintiff's house, because some of the defects in the house appeared after the suit was filed. For a full discussion of this point refer to division 11 of this opinion, where it is pointed out that the estimate of damages to the house made by an informed witness, included only damage shown by the evidence to have resulted from the explosions.

The final contention is that the evidence did not, if accepted as true, show a right of the plaintiff to recover punitive damages. The point is not well taken for two reasons: first, the evidence,

we think, authorized recovery of damages; secondly, it is not made to appear that the plaintiff recovered damages of that nature.

The record discloses evidence of the actual damage to the plaintiff's house in an amount exceeding the verdict rendered. So it cannot be ascertained by a perusal of the pleadings and proof of the case whether the verdict included punitive damages or represented only compensation for the actual loss the plaintiff suffered by reason of the damage done his house. He who alleges error must show wherein it lies.

A delicate instrument known as a "pin test" was used by the defendant to test the effect of its blasting in the locality surrounding its quarry. Simply stated, that instrument consisted of a base made of plate glass. This base sat upon legs which were actually adjusting screws and the base could be placed upon any plane surface and made absolutely level by means of the adjusting screws. When the base had been properly set up and made level, metal rods or pins of varied lengths, varying from six inches to approximately fifteen or sixteen inches in length, were stood on their ends. Once these pins were stood on their ends on the glass base, the slightest vibration would cause the pins to topple. To assure that wind or moving air would have no effect on these pins and that only vibration would cause them to topple, a metal cylinder was placed over each pin and if a pin would topple it would fall against the side of the metal cylinder surrounding it.

Concerning one of the tests made by the defendant, A. W. Ledbetter, Sr., president of the defendant company, testified in part as follows: "There is a scientific test known as the pin test, there's a falling pin machine. You asked do I know of any tests that were made on the falling pin machines to determine whether there was ground vibrations from the blasting. Well, I know of any number, but I know of one in particular that I made myself, wherein the explosions from the quarry made no evidence of affecting the machine at all. That was a case of a house where the machine is very delicate and had to be set up very carefully. It was the house of Mr. Lyman, and it was in Summerville Park. It was comparable in distance from the quarry to the Rape house,

maybe closer to the quarry. Whether this was made at the time or before or after Mr. Rape's complaint I do not know. The pin test is a test where you put a piece of plate glass on the floor, or anywhere in the building that you care to, you think is representative. You level it up—it has to be perfectly level, and then you stand upon it small cylinders of steel. It is very hard to get them to stand up, and you finally get them—the tallest one is about fifteen or eighteen inches, and under the slightest vibration it will topple over. The difficulty experienced in this house with Mr. and Mrs. Lyman, we found that walking around in the house the machine could not be—the pins could not be set up and after quite some delay we had to get the cook to sit down in the kitchen and be still, until we could get the machine set up and then I called the quarry and I was sitting in a hall where I could see the machine; and I called the quarry and told them to put off the blast, which both Mr. and Mrs. Lyman heard, and nothing occurred. The pins did not move. When Mrs. Lyman stood up, in a somewhat frustrated attitude, why, of course, the minute she stood up all of the pins fell over. The blast, which was fired at that time was a very heavy blast that I tested personally. I saw that myself."

While the witness testified that the test blast on that occasion was a heavy one, there is no evidence to show how much dynamite was used as compared with that used on other occasions. If the evidence had shown that on the occasion of this test the dynamite charge used was equal to or greater than the largest amount ever used by the defendant company, we think the evidence would have been conclusive that the defendant's blasting did not and could not have damaged the plaintiff's house. However, since there is no way to gauge the size of the charge used on that test or the magnitude of the explosion, it could be assumed that the blast on that occasion was somewhat less than other blasts which had occurred and that therefore because the pins did not fall on this occasion does not prove that on the occasion of a larger blast they would also not have fallen.

■ The trial judge correctly ruled in denying the motion for judgment notwithstanding the verdict, because as appears in the discussion of the general grounds this court holds the evidence

sufficient to sustain the verdict rendered. The motion for judgment notwithstanding the verdict was not good for the additional reason that the motion for directed verdict upon which it was based was technically deficient, and as presented did not show a right to have a verdict in the defendant's favor ordered. The motion was made on the ground that the plaintiff had not carried the burden of proving that the act of the defendant caused all of the damage to his home, and that all of the damage occurred during the statute of limitations. Where the plaintiff is entitled to recover any part of the sum sued for a verdict for the defendant cannot be directed. *Addington* v. *Western & Atlantic R. Co.*, 93 *Ga.* 566, 569 (20 S. E. 71).

■ Ground 1 of the amended motion for new trial complains that the court charged: "The plaintiff comes into court and files his petition and alleges that he owns a home out in Summerville Park, on Redmond Circle, and that that home has been damaged as a result of a blasting operation carried on by the defendant, Ready Mix Concrete Company." The alleged error was that the pleadings and evidence showed that the plaintiff's home was on Vineland Drive, another road, which followed a course farther from the quarry where the blasting occurred than did Redmond Circle.

The ground is incomplete because no evidence or pleadings are either quoted or specified therein. *Terminal Transport Co.* v. *Decatur Truck & Equipment Co.*, 90 *Ga. App.* 859, 864 (84 S. E. 2d 494).

■ Ground 2 of the amended motion alleges that the court erred in overruling an objection phrased as follows: "We object to this unless he can state now which explosion he is talking about, what day it happened on and pin it down in time, so that we will be able to rebut it as to the point of time."

"It is not erroneous to overrule an objection to evidence where by its terms the objection is predicated upon the existence of facts not disclosed by the evidence at the time the ruling is made." *McConnell Bros.* v. *Slappey*, 134 *Ga.* 95 (5) (67 S. E. 440).

In *Richardson* v. *Lumpkin*, 146 *Ga.* 15 (2) (90 S. E. 379) it is held: "A ground of a motion for a new trial complaining of

the admission of testimony can not avail the movant in this court, unless it shows that the evidence was objected to in the lower court and upon what ground the objection was based. Consequently, where a ground of the motion merely shows that when the plaintiff, who was a witness in his own behalf, was testifying, the movant's counsel stated to the court that he objected 'to any evidence or to sayings of the late (R), unless these remarks were made in the presence of the defendants or either of them,' it presents no question for determination by this court."

The objection made by the defendant did not invoke a present ruling, and falls squarely within the ruling to which we have referred.

■ Ground 3 assigns error because the court allowed, over multiple objections of the defendant, the testimony of a plaintiff's witness: "I bought my house on Redmond Road December the 17th, 1947. You asked, at any time since that time, and before June 21st, 1956, have I heard any explosions. Yes, sir, I made an effort to ascertain where the blasting was coming from. I made it my point to see because it was shaking my house pretty bad. . .

"In that period of time I heard a lot of blasts. You asked, can I tell the jury approximately when I first heard it. Well, I don't know about any date, but it just started about four years ago, the best I can recollect about the time, when the blasts started. I would hear these blasts sometimes twice a day, between eleven and twelve—sometimes a little after lunch, and then it started again about 4:30 to 6. As to how often during a week, or month, well I'm usually at the house about three days out of the week, and I'd hear it when I was at home. I made an investigation to try to determine where the blasts were coming from. I even went out on Redmond Circle and I knew that was where the blast came from. I located the quarry. The blast I testified to came from the direction of the quarry. As to the intensity of these blasts, well, it would jar the house. The blast shook my house. It just give a jar, you know, and the dishes and things would even rattle in the house."

The ground alleges that the ruling was prejudicial and harm-

ful to the defendant because the evidence was speculative, concerned explosions that were not identified as to time or occurrence, and the effects of damages not shown to have been "caused by the explosions or by the defendant."

An examination of these allegations reveals that a perusal of the entire record is necessary to ascertain whether the ruling, if error, was hurtful, for while the ground avers that the facts alluded to appear from the record, no pleadings or evidence are set out, or specified by page of the record. The defendant undertakes in its brief to supply the deficiency of the ground. This cannot be done, even in the bill of exceptions. *Bourquin* v. *Bourquin,* 110 *Ga.* 440 (1) (35 S. E. 710). The ground is incomplete.

■ Grounds 4, 5, 6 and 7 of the amended motion assign as error the admission of testimony in the opinion of the witnesses that certain damage to the plaintiff's house was caused by explosions set off by the defendant. The witnesses in each instance stated the facts upon which their opinions were and logically could be based. They testified to hearing the explosions, feeling the jar of resultant concussions and some of the witnesses testified that immediately thereafter the damaged condition of the plaintiff's house was discovered. In *Emory University* v. *Bliss,* 35 *Ga. App.* 752, 754 (134 S. E. 637), is an expression peculiarly applicable here: "From all the testimony it appears that these defects did not exist before the explosion but were caused by it. It will not do to say that these three defects probably existed before the explosion. If the plaintiff ever excluded the theory of negligence on the part of the students or others than the defendant in allowing gas to escape through the pet-cocks in these boxes, he at the same time showed that there were no defects in the pipes or cocks within the boxes before the explosions. Under the situation and all the circumstances, the exclusion of one of these facts equally excluded the other. The plaintiff's contention was that the gas was confined between the floors somewhere outside the boxes, and that no gas was in the boxes. If none was ever in them before the explosion, then the defects found after the explosion can be explained upon no other theory than that they were caused by the explosion. See in this con-

nection, *Ga. R. Co.* v. *Roberts,* 114 *Ga.* 387 (40 S. E. 264); *Carroll* v. *Atlanta Paper Co.,* 7 *Ga. App.* 584 (67 S. E. 680); *Ga. Ry. &c. Co.* v. *Harris,* 1 *Ga. App.* 714 (57 S. E. 1076)."

That a witness may give his opinion that a particular event causes damage to his property or the property of another is without question. *City Council of Augusta* v. *Lombard,* 93 *Ga.* 284 (5) (20 S. E. 312); *Atlantic Mutual Fire Ins. Co.* v. *Pruitt,* 62 *Ga. App.* 466, 483 (8 S. E. 2d 427); *Monroe* v. *Guess,* 41 *Ga. App.* 697 (4) (154 S. E. 301).

A contrary view is not supported by the holding of *Georgia Ry. & Power Co.* v. *Head,* 155 *Ga.* 337 (1) (116 S. E. 620), where it is stated that a "witness . . . will not be permitted to usurp the functions of judge and jury by stating a conclusion of law, as, for instance the existence and character of an agency."

The ground would not have shown reversible error even had the evidence objected to been inadmissible, because the defendant not only permitted other similar evidence on the same issue to be admitted without objection but actually introduced evidence of the same nature concerning the same issue. *Fraser* v. *State,* 52 *Ga. App.* 92, 93 (182 S. E. 418); *Southeastern Greyhound Lines* v. *Hancock,* 71 *Ga. App.* 471 (2) (31 S. E. 2d 59).

█ Ground 8 of the amended motion complains that the plaintiff was permitted to introduce the defendant's records showing the dates on which it set off explosions. As held in dealing with the general grounds, the petition was sufficiently definite as to when the explosions occurred. The records were pertinent and material evidence supporting the allegations of the petition.

The records were particularly essential in proving the case as laid by permitting the jury to know the dates of the blasts and the quantity of dynamite used in each blast, and all of the blasting appeared from the records to have been done during the period alleged in the petition.

█ Ground 9 alleges that the defendant objected to the amount of damages made by a plaintiff's witness because he testified that it included replacements where cracks appeared since the suit was filed. The witness made it clear that these cracks made no difference in his estimate of the costs of repairs

for the reason that the cracks existing before the suit was filed (the cracks originally caused by the explosions set off by defendant) necessitated the same replacement of the plaster regardless of the cracks that became evident after the suit was filed. The evidence was admissible.

The court properly excluded the evidence of a defendant's witness who testified that blasts were set off at the public works camp during the period the plaintiff contended his house was damaged. The witness did not undertake to testify how far the public works camp was from the plaintiff's home, though he estimated the distance of its location from the City of Rome. The witness did not describe intensity of the blasts at the public works camp nor did he state any fact from which their force might be ascertained or estimated.

Grounds 11, 12, and 13 assert that the court erred in permitting the plaintiff to introduce evidence merely cumulative to that submitted by him in making out his case. The defendant introduced the evidence of expert witnesses in contradiction of the plaintiff's proof, and the issues were tightly drawn. In *Southern Ry. Co.* v. *Clay,* 130 *Ga.* 563 (4) (61 S. E. 226), it is held: "Where the plaintiff made out a prima facie case, which was vigorously attacked by the defendant, it was not error to permit the plaintiff to introduce additional testimony in support of his case and in rebuttal of the evidence of the defendant, notwithstanding the same proof might have been adduced on the first examination." We are of the opinion that the grounds do not show error.

The judgment denying the motion for new trial having been affirmed, the cross-bill must be dismissed. *Landrum* v. *Thomas,* 52 *Ga. App.* 257 (183 S. E. 140); *Calhoun Oil &c. Co.* v. *Western & Atlantic R.,* 35 *Ga. App.* 436 (2) (133 S. E. 348); *Hammond* v. *Conyers,* 118 *Ga.* 539 (45 S. E. 417); Code (Ann.) § 6-901.

*Judgment affirmed on main bill of exceptions and the cross-bill of exceptions is dismissed. Felton, C. J., concurs. Nichols, J., concurs specially.*

NICHOLS, Judge, concurring specially. Special ground numbered 10 of the amended motion for new trial complains of the

exclusion of evidence offered by the defendant to the effect that the "Public Works Camp" located approximately three miles from Rome and five miles from the defendant's quarry by road, less by air, had blasted during substantially the same period of time that the defendant had (the period of time during which the defendant had allegedly damaged the plaintiff's house). The defendant was seeking to show that others, besides itself, had been blasting during the period when the plaintiff's house was allegedly damaged so as to, presumably, raise an issue for the jury as to which blasting caused the alleged damage.

"It has long been the rule in this State that where the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury. *Dalton* v. *Drake,* 75 *Ga.* 115; *Talbotton Railroad Co.* v. *Gibson,* 106 *Ga.* 229, 236 (32 S. E. 151); *Nugent* v. *Watkins,* 129 *Ga.* 382, 385 (58 S. E. 888); *Crozier* v. *Goldman,* 153 *Ga.* 162, 165 (111 S. E. 666); *Purser* v. *McNair,* 153 *Ga.* 405 (112 S. E. 648); *Central of Georgia Ry. Co.* v. *Keating,* 177 *Ga.* 345, 352 (170 S. E. 493); *Fitzgerald* v. *Vaughn,* 189 *Ga.* 707, 709 (7 S. E. 2d 78)." *Lovejoy* v. *Tidwell,* 212 *Ga.* 750, 751 (95 S. E. 2d 784).

The trial court in excluding the evidence ruled that the location of the blasts was in an area too remote to be of any value to the jury.

The intensity of the blasts at the "Public Works Camp" was not shown, nor was its distance from the plaintiff's house, although it was shown that the blasting at the "Public Works Camp" was done during the same period of time as that sued for, and that, while it was not done each day, the days on which blasting was done it was done at approximately the same time of day as that done by the defendant.

The evidence was competent evidence and it was error for the trial court to exclude it on motion of the plaintiff.

The next question presented is whether the exclusion of the evidence was harmful to the defendant. To be harmful error the excluded evidence must be shown to be such as would have benefited the defendant. *Allen* v. *Kessler,* 120 *Ga.* 319 (47 S. E. 900); *York* v. *State,* 42 *Ga. App.* 453 (5) (156 S. E. 733). "Errors in admission or exclusion of evidence which would in no

event alter or affect the outcome of the case are harmless and do not require reversal." *Owens* v. *Service Fire Ins. Co. of N. Y.*, 90 *Ga. App.* 553 (3) (83 S. E. 2d 249).

As has been stated above the intensity of the blasts at the "Public Works Camp" was not shown, nor was the distance of such camp from the plaintiff's house. Without this information, once the jury arrived at the conclusion, during its consideration of the case, that the damage to the plaintiff's house was caused by blasting, it could not be determined that the damage was contributed to by the blasting done at the "Public Works Camp," much less that it was the sole proximate cause of the plaintiff's damage.

Accordingly, while error is shown by this special ground of the amended motion for new trial, harmful error is not shown so as to cause a reversal of the judgment of the trial court.

Had the defendant sought to prove the distance from the "Public Works Camp" to the plaintiff's house and the intensity of the blasts used at the "Public Works Camp," then the jury would have had evidence from which it could determine whether the blasts from the "Public Works Camp" were the sole proximate cause of the damages, but without such information the jury could not have determined whether such blasting was the sole proximate cause of the plaintiff's damages, and the excluded evidence could not have benefited the defendant.