SWAIN v. MACON FIRE INSURANCE COMPANY, and
*vice versa.*

1. Although a policy of fire-insurance stipulated that "the existence or subsequent procurement of other insurance on the property hereby insured" would, "unless specially agreed to in writing in or upon this policy," avoid the contract embraced therein, yet if the agent of the company at the time of issuing the policy in fact knew of the existence of prior insurance upon the property, the policy was not void because the company's consent to the prior insurance was not expressed in writing in or upon the policy as required by the stipulation above mentioned.

2. The evidence was conflicting upon the question as to whether or not the defendant's agent knew or had notice of the existence of the prior insurance, when he issued the policy sued upon in the present case; and it was therefore erroneous to direct a verdict in the defendant's favor.

3. Where an action was brought for two separate and distinct claims arising upon an insurance policy, one for an alleged loss upon a house which had been burned, and the other for an alleged loss upon the furniture therein,

the granting of an order declaring "that the plaintiff be and is nonsuit for the claim of loss upon the house set forth in the policy," was not the granting of a nonsuit, but merely an erroneous ruling of which complaint could properly be made in a motion for a new trial.

Argued June 16, — Decided July 28, 1897.

Action on insurance policy. Before Judge Felton. Bibb superior court. April term, 1896.

Swain brought suit upon a policy of fire-insurance upon a dwelling-house and furniture therein contained. On the trial, at the close of plaintiff's evidence, the court on motion ordered that he be nonsuit for the claim of loss upon the house; and at the close of all the evidence, directed a verdict for the defendant. Plaintiff moved for a new trial, because the verdict was contrary to law and evidence; because the court erred in directing said verdict; and because the court erred in granting the nonsuit, this being error for the reasons that the court had no power to segregate the case and grant a nonsuit as to a part only, and that under the evidence plaintiff was entitled to recover damages for the loss of the house by fire. The motion was overruled, and plaintiff excepted. By cross-bill defendant excepted to the refusal of the court to dismiss so much of the motion as assigned error upon the grant of the nonsuit; the motion to dismiss being on the ground that the court had no power to grant a new trial for error in granting a nonsuit.

The policy sued on is dated July 28, 1893, written by the defendant company to plaintiff, in consideration of $20.25 and the stipulations herein named, for one year, and is for indemnity against loss or damage by fire to an amount not exceeding $1,500, of which $1,050 is upon the house and $450 upon the furniture therein. Attached to the policy are the "three-fourths value clause," and the "mortgagee's clause," the latter referring to the house and not to the furniture. The former makes the condition, that in the event of loss or damage by fire, the company shall not be liable for more than three fourths of the cash value in each item insured (not exceeding the amount insured on each item) at the time immediately preceding such loss or damage; "and in the event of additional insurance, if any is permitted hereon, then this

company shall be liable for its proportion only of three fourths of such cash value," etc. The "mortgagee's clause" makes loss, if any, payable to the Southern Building & Loan Association of Knoxville, Tenn., mortgagee or trustee, as hereinafter provided; it being hereby understood and agreed, that this insurance, as to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured; . . provided, that in case the mortgagor or owner neglects or refuses to pay any premium due under this policy, then on demand the mortgagee or trustee shall pay the same . . . It is, however, understood that this company reserves the right to cancel this policy, as stipulated in the printed conditions on said policy; and also to cancel this agreement on giving ten days notice of their intention to the trustee or mortgagee named therein; and from and after the expiration of the said ten days, this agreement shall be null and void. It is further agreed, that in case of any other insurance upon the property hereby insured, then this company shall not be liable under this policy for a greater portion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein. It is also agreed, that whenever this company shall pay the mortgagee or trustee any sum for loss under this policy, and shall claim that as to the mortgagor or owner no liability therefor exists, it shall at once and to the extent of such payment be legally subrogated to all the rights of the party to whom such payments shall be made, under any and all securities held by such party for the payment of said debt; but such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured. Or said company may at its option pay the said mortgagee or trustee the whole debt so secured, with all the interest which may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payment shall be made an assignment and transfer of said debt with all securities held by the said parties for the payment thereof."

Among the conditions of the policy it is stated that the following will avoid this contract: "Fraud or attempt at fraud by the assured; false representation or concealment by the assured or his agent concerning ownership, condition, situation, use or occupancy of the property insured; also the following, unless specially agreed to in writing in or upon this policy, namely, . . the existence or subsequent procurement of other insurance on the property hereby insured." It is further provided, that this insurance may be terminated at the option of the company, on giving notice to that effect to the parties in interest, and tendering to the assured or his agent a ratable proportion of the premium for the unexpired term of the policy. Upon it was an entry of cancellation, dated August 31, 1897.

In evidence appear two by-laws of the loan association before mentioned, requiring that: "All buildings on which loans are made shall be kept insured by the owner at his own expense, and the insurance made payable to the association as its interest may appear. All policies shall be renewed and turned over to the association at least forty-eight hours before expiration. But in case the owner shall fail to obtain such insurance or renewal, or in case he shall desire said association to obtain it for him, this shall be done by the agents of said corporation, and the owner shall pay the expense thereof." Also, that "Members obtaining loans shall execute such notes or bonds and mortgages as shall be required by the board of directors."

Three weeks before the policy sued on was written, Goodwyn, the agent of the loan association, had caused to be issued a similar policy by another company to plaintiff, covering the same house but not the furniture, having attached to it a loss payable clause exactly like the one attached to the policy sued on. According to plaintiff's testimony, he knew nothing of the issuance of this other policy. The fire occurred on October 16, 1893. Suit upon this earlier policy was brought in the name of plaintiff for the use of the loan association, and a verdict therein was rendered in plaintiff's favor for $797. The judgment rendered thereon was settled, February 9, 1895,

by the defendant in that suit paying to the loan association $500 and relinquishing to it the right to subrogation to the securities held by the association against plaintiff. The present action was commenced on March 26, 1894. In evidence appears a written disclaimer of the loan association, dated February 2, 1895, of any right or benefit under the policy now sued on, made in pursuance of a former disclaimer of right in the policy, and consent for the plaintiff to bring this suit; the policy never having been delivered to the association nor obtained by its consent or knowledge. The first that Goodwyn knew of this policy was a few days after the fire, when Wilson, the president of defendant, notified him of it. He stated to Wilson, that the loan association had no claim against his company, but had taken former insurance and held that as valid.

It further appears, according to plaintiff's testimony, that he was called upon by one Worsham (who was a solicitor of insurance but not an employee of defendant), and he requested Worsham to procure insurance for him on the house, this being about four days before the policy sued on was written. On the next day Worsham returned to plaintiff, accompanied by Willingham, the agent of defendant, who asked plaintiff if there was any insurance on the house. Plaintiff replied, if there was, he did not know it; that he had it insured the last year (giving the names of the agents that had insured it), but the policy was out, and he had agreed to keep it insured. He also told Willingham that it was insured before at $1,050, and Willingham said he thought $1,000 would be sufficient. To this plaintiff assented. Willingham then asked if there was any other insurance on it; and plaintiff replied, if there was, he did not know it; and Willingham said, it did not make any difference, "if there is, I will insure it." He then asked if plaintiff had any insurance on his furniture. Plaintiff replied that he did not care about insuring that, but on Willingham insisting, agreed to insure the furniture for $500. Three days afterward Willingham brought plaintiff the policy, and told him they had made a change in it and had insured the house at $1,050 and the furniture at $450, making the same

amount. Plaintiff assented, and asked if he was going to allow him to pay for it quarterly. Willingham said no, the company required cash. Plaintiff said, he could not pay it that morning, and Willingham would have to bring it another day. Willingham then agreed for plaintiff to pay $8 then, $2 in two weeks, and the balance in sixty days; gave plaintiff a receipt for the $8, and directed him to pay the balance to Worsham. Plaintiff then handed back the policy to Willingham, and requested him to hand it to Goodwyn to take care of for plaintiff. Plaintiff also paid to Worsham the balance of the premium on the policy, within the time agreed for such payment; and had no notice of the cancellation, or of any claim that the policy was otherwise than of full force, until after the fire, when Wilson, the president of the company proposed to return the $8 the company had received, Worsham not having turned over the amount collected by him. In the course of his testimony plaintiff says: I took the policy with Willingham because the other one had expired. I know this, because it was made on the 7th day of July, and that was on the 28th, and I knew it was obliged to be out. I did not think it had been renewed, because I expected the agent to come to me to renew it; the understanding was, that if I did not renew it the mortgage company would, but I did not think about it. I did not think the agent had anything to do with it. I did not know that the mortgage company was going to renew the policy. I did not know anything about it. I knew it ought to be done; the mortgage company told me to keep the house insured, and that if I did not, they would. They did keep it insured. I did not tell Willingham anything about that. I did not have any idea in the world that the house was insured when I insured it; if I had, I would not have done it, for I did not want to pay out the money. I do not know who paid the premium on the other policy. I never had anything to do with it. I did not know anything about it. I was here on the trial of the other case, and testified about the value of the house. I did not sue the case; as well as I recollect, it was brought in my name and taken out of it because I was not the man. I did not get any of that money.

I did not know it was settled. I paid interest on the debt to the mortgage company until the house was burned; they have never presented it to me since. I don't know whether my mortgage-debt was paid or not. I don't know anything about it. I never had a word about the settlement. I have not heard about the mortgage since; and Mr. Thomas, the lawyer for the company, who is my lawyer now, has never mentioned it to me, nor has Goodwyn. If I get my money out of defendant, it would not be my duty to pay Mr. Thomas what I get out of it. I have not got anything to do with paying him, and I have got nothing to do with paying Goodwyn anything, unless they present their papers. I did not bring this suit in favor of the company like the other one, because I had the insurance to myself. Mr. Thomas was my lawyer and the loan company's lawyer when he brought these two cases. When he brought these two policies into court, I knew that they were payable to the loan company so far as the house is concerned.

*James A. Thomas* and *Hardeman & Moore*, for plaintiff.
*Dessau & Hodges*, for defendant.

LUMPKIN, P. J.   1. The ruling announced in the first headnote is directly supported by the decision of this court in *Carrugi* v. *Atlantic Fire Ins. Co.*, 40 *Ga.* 135, and *City Fire Ins. Co.* v. *Carrugi*, 41 *Ga.* 660, both of which are cited approvingly in *Greenwich Ins. Co.* v. *Sabotnick*, 91 *Ga.* 719. In this connection, see, also, *Clay* v. *Phœnix Ins. Co.*, 97 *Ga.* 44; *Phenix Ins. Co.* v. *Searles*, 100 *Ga.* 97.

2. The evidence was conflicting upon the question whether or not the agent of the insurance company had notice of the prior insurance at the time he issued the policy sued upon in the present case. The solution of this conflict was a matter for the jury, and not for the presiding judge. Consequently, directing a verdict in the defendant's favor was erroneous.

3. By a cross-bill of exceptions, the defendant in error undertook to present for determination by this court the question whether the granting of a nonsuit was proper subject-matter for a ground of a motion for a new trial. It does not, however, appear that the trial judge granted a nonsuit. The ac-

tion was for two separate and distinct claims arising upon the same insurance policy; one for a loss alleged to have been occasioned by the burning of a house, and the other for a loss resulting from the destruction by fire of the furniture in that house contained. The judge granted an order declaring "that the plaintiff be and is nonsuit for the claim of loss upon the house set forth in the policy," but allowed the trial to proceed upon the other branch of the case. We are not aware of any precedent for the granting of such an order. In our opinion, the court can not grant a partial nonsuit. It may strike from the declaration irrelevant matter, or allegations setting up no cause of action; or, by proper instructions to the jury, cut the plaintiff off from recovering upon a claim embraced in his petition upon which, under the law and evidence, there could be no lawful recovery in his favor. But granting a nonsuit as to a portion of the plaintiff's case is a thing unknown to our practice. This court, in *Hudson* v. *Ga. Pac. Ry. Co.,* 85 *Ga.* 203, 208, while declining to decide whether or not the granting of a nonsuit could properly be made the ground of a motion for a new trial, expressly stated that so doing was not the proper practice, but that "a motion to reinstate the case should be made, or a bill of exceptions to this court taken." Be this as it may, we are of the opinion that the order passed in the case at bar should be treated, not as the granting of a nonsuit, but merely as an erroneous ruling of which complaint could properly be made in a motion for a new trial.

*Judgment on main bill of exceptions reversed; on cross-bill, affirmed. All the Justices concurring.*