26896.  WHITE *v.* BOYD.

DECIDED JULY 15, 1938.

224

*Mitchell & Mitchell, W. E. & W. G. Mann,* for plaintiff.

*R. Carter Pittman,* for defendant.

SUTTON, J. 1. From a careful consideration of the evidence we do not think that it could be said as a matter of law that the defendant was not grossly negligent; and the court erred in granting a "nonsuit" or in withdrawing from the jury the issue under count 2 of the petition, which was based on gross negligence. Furthermore, the court could not legally grant a partial nonsuit, as will be seen from the authorities cited later in this decision.

Without setting forth the evidence in detail, it may be stated that it appears that the defendant was driving his bus along the LaFayette highway, approaching the intersection beyond which the collision occurred, at not exceeding thirty miles an hour; that another car driven by Luther Boyd was traveling along a road on the left of and leading into the LaFayette highway; that the driver of the latter car, without looking in the direction of the bus and without slowing or stopping his car, which continued to run about twenty miles an hour, and without yielding to the defendant the right of way, as required by the Code, § 68-303(g), entered the intersection and passed over to the right side of LaFayette highway; and that in a short interval the collision took place. It was testified by some that the left front hub of the defendant's bus struck the rear right fender of the Luther Boyd car, and that thereupon the bus, which had for a few seconds been following it on the right shoulder of the road, ran down the embankment and turned over; and that at the time of the collision the defendant was attempting to pass Luther Boyd's car on the right and get ahead of it. The defendant testified, that, relying on his right of way and assuming that the other car would stop at the intersection and permit him to pass across the same, he made no effort to brake his bus in coming down the incline towards the intersection, traveling at a rate of speed which no witness testified was more·than thirty miles an hour,·but blew and continued to blow his horn while coasting; that when he discovered that the Luther Boyd car was entering the intersection, he put on his brakes and was struck by the other car while he was attempting to avoid a collision by turning to the right; that to have. turned to the left would have caused the other car to strike him sooner; that his car was equipped with good brakes, and at the intersection he might have been able

to stop his bus quickly, but that it would have thrown his passengers forward in the car, and that he had to act with respect to their safety.

It is clear that as the defendant drove down the incline he was under no duty to so control his bus as to be able to stop suddenly and avoid striking the Luther Boyd car. He was under no duty to anticipate that Luther Boyd would violate the statute and fail to yield the right of way, but had a right to rely to the contrary. When he perceived that the other car was in the act of entering the intersection, he could not legally endanger the person of the plaintiff by blindly and recklessly proceeding across the intersection, but owed to her the duty of exercising slight care or diligence which in the Code, § 105-203, is defined as "that degree of care which every man of common sense, howsoever inattentive he may be, exercises under the same or similar circumstances." The absence of such care is termed gross negligence, and with that degree of negligence the defendant in the present case is charged by the plaintiff. There was testimony that the defendant, instead of putting on brakes after reaching the intersection when the Luther Boyd car had entered, increased his speed and tried to pass the car on the right, and that the collision did not occur until a distance of about one hundred feet or more from the intersection had been traversed. The defendant testified that to have turned to the left would have brought the cars into contact sooner, and that the putting on of brakes might have endangered the safety of the occupants of the bus. We think, however, a jury question was presented as to whether or not the defendant failed to exercise slight care and was guilty of gross negligence, and that the court erred in granting a "nonsuit" on count 2 of the petition, or, in other words, withdrawing this feature of the case from the jury.

2. We do not think that the plaintiff successfully carried the burden of showing, under count 1 of the petition, that on the occasion of her injury she was a passenger for hire. "A passenger is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier as to the payment of the fare or that which is accepted as an equivalent therefor." Code, § 18-201. It is not shown by the evidence that she made any agreement, express or implied, with the defendant to transport her in the relationship of passenger and carrier. She paid nothing,

did not promise to pay anything, and did not profess to have known anything about an arrangement, alleged in her petition, whereby from paid admissions to the school entertainment the bus drivers would be compensated for transporting her and others. As between her and the defendant it was not shown that he accepted her as a passenger. "A mere intention on the part of one to become a passenger, without regard to any act on the part of the carrier from which an acceptance of him as a passenger might arise, expressly or by necessary implication, does not constitute such person a passenger." *Matthews* v. *Central of Georgia Ry. Co.*, 46 *Ga. App.* 699, 703 (169 S. E. 41). Count 1 of the petition seeks to set out a contract of passenger and carrier, by alleging that she was to pay, along with others, a certain admission charge at the Mount Vernon school entertainment, and that from the proceeds the defendant was to be paid as a carrier for transporting her and others. But there is no evidence that the defendant ever entered into a contract with the school authorities, on her behalf, to act as a carrier for hire. It appears from the evidence that the defendant was a school-bus driver, employed to transport children to and from the Mount Vernon school; that the principal of the school arranged for a school entertainment for the night of October 30, 1936, and before the entertainment sought to induce the bus drivers to transport without charge those who wished to attend, explaining that with free transportation more persons would attend, and the school be thereby benefited. The principal of the school testified that something was said about paying part of the expenses of the bus drivers, but that he made no positive promise, for the reason that one of the trustees thought that such service by the drivers should be free, but that about a week after the entertainment he did pay the drivers one dollar each. He testified that he could not say whether or not the defendant was present with the other drivers. Two drivers, Denver Dobson and John Anderson, testified that they had a conversation with the principal on the afternoon before the entertainment; that the question of expenses came up; that Anderson said that he used to haul for another school and for making trips to entertainments he received a dollar; and that the principal told them he would pay them that sum on their gas if they would haul persons to the Mount Vernon school entertainment. While the defendant entered the group be-

fore it disbanded, neither Dobson nor Anderson could state that he was present when the discussion took place as to receiving one dollar towards expenses. On this point the defendant testified that he accepted the plaintiff only as a guest and out of accommodation to the school; that no agreement was had with the principal under which he was to be paid anything, but about a week after the entertainment he was given one dollar towards his expenses; that he was present when the principal and the two bus drivers, Dobson and Anderson, were talking about bringing people to the entertainment; and that he said he wanted to do all he could, and would do what the others would do, but that while he was present nothing was said about paying anything whatever. We do not think that it is shown by the evidence that any contract as a carrier was entered into by the defendant, and the payment of one dollar after the entertainment can not reasonably be considered more than a gratuity or part reimbursement of the expense incurred. The acceptance of the one dollar could not relate back and set up a contract of a carrier for hire.

The court can not grant a partial nonsuit, as was held in *Swain* v. *Macon Fire Insurance Co.,* 102 *Ga.* 96 (29 S. E. 147), *Talbotton Railroad Co.* v. *Gibson,* 106 *Ga.* 229, 237 (32 S. E. 151), *Southern Railway Co.* v. *Hardin,* 107 *Ga.* 379, 381 (33 S. E. 436); and *Bearden* v. *Longino,* 183 *Ga.* 819, 821 (190 S. E. 12). Under the law and the evidence in the present case, the court should have submitted to the jury the issue on gross negligence under count 2, and should have withdrawn from the consideration of the jury count 1, or, in other words, instructed them that there could be no recovery under that count. The judgment is reversed, with direction that the court, on retrial of this case, confine the issue to count 2 of the petition, the count based on gross negligence.

*Judgment reversed, with direction. Felton, J., concurs. Stephens, P. J., concurs specially, and dissents in part.*

STEPHENS, P. J. I concur in the conclusion reached, as stated in the opinion of the court, that under the law and the evidence "the court should have submitted to the jury the issue on gross negligence under count 2," and therefore that the court erred in granting the so-called nonsuit as to this count. I also concur in the conclusion that the court did not err in ruling that the evidence was insufficient to authorize a verdict for the plaintiff under

count 1 of the petition, and in directing a verdict for the defendant on this count. While the court, in its order, stated that it granted a "nonsuit" as to count 2 of the petition, and withdrew from the jury the question of "gross negligence on the part of the defendant," as alleged in count 2, and also overruled the motion for nonsuit as to count 1, "setting up the passenger-carrier relationship," the order was not one granting a nonsuit, but was only a ruling that there was no evidence to support the allegations of gross negligence alleged in count 2 of the petition, and withdrawing from the consideration of the jury the question as to gross negligence, and reserving for the consideration of the jury the question of the plaintiff's right to recover on the relationship of passenger and carrier, as alleged in the first count. The order of the court did not have the effect of granting a nonsuit. Therefore no nonsuit was granted. See *Swain* v. *Macon Fire Ins. Co.,* 102 *Ga.* 96 (3) 103 (29 S. E. 147). The judgment in this case is reversed on the ground that the court erred in withdrawing from the jury's consideration count 2 of the petition. The error of this ruling affects the verdict which was afterwards rendered for the defendant. This verdict necessarily, for this reason, should be set aside. While the court may have directed a verdict for the defendant on count 1, it does not appear from the verdict itself that it was found upon either count of the petition. The verdict is merely a general verdict for the defendant. The action of the court in withdrawing from the jury's consideration count 2, and in directing a verdict for the defendant on count 1, was in effect a direction of a verdict for the defendant on both counts of the petition. The court having erred in so far as the verdict was directed on count 2, the general verdict for the defendant, as directed and returned, should be set aside and a new trial granted. On a new trial the case should stand for trial on both counts of the petition, and be determinable under whatever evidence may be adduced. I therefore concur in the judgment of reversal, setting aside the verdict for the defendant; but I do not concur in that part of the judgment which directs that on a retrial of the case the "court confine" the issue to count 2 of the petition.