GERTRUDE LAPLANTE *v.* PHILIP ROUSSEAU.

CECELIA LAPLANTE *v.* SAME.

*John M. Stark* and *Donald G. Matson*, for the plaintiffs.

*Demond, Sulloway, Piper & Jones* (*Mr. Piper* orally), for the defendant.

PAGE, J.    The defendant was driving from Florida to his home in Franklin, New Hampshire, on June 29, 1938.   The plaintiffs, his stepdaughters, were invited gratuitous passengers.  He was involved in an accident in the afternoon of that day a few miles north of Brunswick, Georgia, as a result of which the plaintiffs suffered personal injuries.

The defendant urges that the plaintiffs cannot be found to have made out a case, since their testimony is unbelievable as a matter of law.   It is said that a conspiracy is indicated to bring the facts within the Georgia cases which are here controlling.   *Lee* v. *Chamberlin*, 84 N. H. 182.   Where there is cause for suspicion that evidence has been built up to make a case, the jury may properly be asked to consider whether the testimony is credible.   But it is only in clear cases that we may say as a matter of law that the testimony is entirely unworthy of belief.   *Laporte* v. *Houle*, 90 N. H. 50.

The defendant says that the plaintiffs' evidence presents the case of "a story rehearsed for the occasion."   It may be assumed that witnesses are usually interviewed before trial, but that fact alone does not render their testimony incredible.   In this case the defendant emphasizes certain inconsistencies in the testimony as to speed and measurements.    These might be thought to derive in part from defective judgment and from indifferent rehearsal beforehand, rather than from design to falsify.   Also mentioned is the "eagerness" of one of the plaintiffs to make it appear that the defendant was driving sixty miles an hour.   We think that no more was presented than questions for the jury as to the weight of the testimony, that the testimony was not so clearly unreliable that no credit could be given to it as a matter of law.

The defendant admitted that he was driving at a little more than fifty miles an hour.   It is conceded that the Georgia statute makes unlawful a speed greater than forty miles an hour in such a situation as existed here.   At this speed of more than fifty miles an hour, the defendant traversed a long curve.   When he had passed the curve, he saw a truck ahead going in the same direction.   Its distance from him he placed at 240 feet, other witnesses at 300 to 350 feet.   The speed of the truck was estimated in general terms at half that of the

defendant's car; more particularly one of the plaintiffs called the speed of the truck thirty to thirty-five miles an hour. There is agreement that the truck was two or three feet to the left of the middle line of the tarvia, which was eighteen feet wide. The tarvia was flanked by dirt shoulders about two feet wide, and there was a drop of about two inches from the tarvia to the left shoulder.

The defendant concedes that he continued his speed, after seeing the truck in the situation described; that he did nothing to slacken it; that he gave no signal for passing, so as to induce the truck-driver to move over wholly on the right-hand side; that he did nothing until he was forty-five feet from the truck; that he was then going so fast that he did not dare to apply his brakes. It could be found that during the elapsed time he was looking straight ahead and that the position of the truck with respect to the middle line of the road had not changed. It could also be found that the defendant had only six feet of free tarvia for passing, and that at a speed of above fifty miles an hour that space was precarious.

In this situation, the defendant swung his car to the left, so that his left-hand wheels were on the shoulder. He passed the truck and turned again right. The wheels caught on the edge of the tarvia, and the automobile turned over twice, inflicting the injuries for which suits were brought.

Under the law of Georgia, a gratuitous passenger can recover for the negligence of the driver only when the latter's lack of care is so great as to amount to gross negligence. *Epps* v. *Parrish*, 26 Ga. App. 399; *Peavy* v. *Peavy*, 36 Ga. App. 202; *Wachtel* v. *Bloch*, 43 Ga. App. 756; *Evans* v. *Caldwell*, 45 Ga. App. 193; *Hopkins* v. *Sipe*, 58 Ga. App. 511. The defendant says that under the definitions of gross negligence familiar to us in the Massachusetts and Vermont cases, he could not be found entirely lacking in care so as to be guilty of gross negligence, and he points to the case of *Tucker* v. *Andrews*, 51 Ga. App. 841, as apparently approving of the language of some of those cases and of our language in *Lee* v. *Chamberlin, supra.* We think, however, that the trend of the Georgia decisions is likely to furnish the better test, and will seek to know the application to the facts which her courts have made in the past.

First, however, it may be remarked that the protest that one of the plaintiffs made to the defendant regarding speed shortly before the accident neither added to the defendant's lack of care nor changed the relationship so as to put him under the duty of greater care. *Blanchard* v. *Ogletree*, 41 Ga. App. 4; *Wachtel* v. *Bloch, supra.*

The Georgia courts, in applying their rule of gross negligence, seem never to have held that it must be the equivalent of no care at all. They have, indeed, spoken of gross negligence as the failure to exercise slight diligence. *Insurance Co. of North America* v. *Leader*, 121 Ga. 260, 272. But various degrees of attention on the part of the driver are discernible on the facts of cases where it was said that the question of gross negligence was for the jury.

Gross negligence may be "so gross as to amount to wantonness or recklessness." *Central Railroad Co.* v. *Denson*, 84 Ga. 774, 776, 780. To constitute wilful or wanton negligence the evidence must show that the defendant "knew his conduct would inflict injury, or that, on account of the attendant circumstances which were known to him, or with knowledge of which he was chargeable, the inevitable or probable consequence of his conduct would be to inflict injury, and with reckless indifference to the consequences of such conduct he committed the act, or omitted to do his duty to avoid the threatened injury." Or, as the Georgia court said after quoting the above from an Alabama court, "There must be affirmative evidence of facts tending to show . . . the existence of particular circumstances from which an inference of a conscious indifference to consequences might legitimately be drawn." *Southern Railway Company* v. *Davis*, 132 Ga. 813, 818, 819.

In an automobile case the court suggested that gross negligence was the exercise of slight care. They made it clear that total want of care was not necessarily the test of gross negligence. It would constitute gross negligence, but "slight care" includes also such care as careless and inattentive persons usually exercise, while gross negligence is the want of that diligence which even careless men exercise, or carelessness manifestly and materially greater than want of common prudence. In order to qualify as gross, negligence need not be wilful and wanton. But if it goes so far as to raise a presumption of conscious indifference, or to show that "with reckless indifference, the person acted with actual or imputed knowledge that the inevitable or probable consequence of his conduct would be to inflict injury," then it is wanton. *Peavy* v. *Peavy*, 36 Ga. App. 202, 204, 205. The definition of wanton negligence and its recognition as the worst degree of gross negligence have been emphasized in other cases. *Blanchard* v. *Ogletree*, 41 Ga. App. 4, 7; *Dixon* v. *Company*, 56 Ga. App. 626. Slight diligence, as it is understood in Georgia, may include more than one degree of care.

Mere failure to comply with a speed statute is not necessarily

gross negligence. *Engle* v. *Finch*, 37 Ga. App. 389; *Wilder* v. *Company*, 57 Ga. App. 255; *Hopkins* v. *Sipe*, *supra*; *Peavy* v. *Peavy*, *supra*. But certain factors in the situation, combined with speed, may make a case in which reasonable men could find the driver grossly negligent. Several defendants have found themselves in this predicament, including: (1) The driver who, used to a Model T Ford and unused to a Model A, drove the latter at forty-five miles an hour, went off the road, brought the car safely back to the middle, attempted to apply the brakes, touched the accelerator by mistake, and turned over in the ditch. *Rowe* v. *Camp*, 45 Ga. App. 794. (2) The man who took an S-curve at seventy miles an hour, tried to pass a car there overtaken, and collided with a street car. *Frye* v. *Pyron*, 51 Ga. App. 613. (3) The driver, going seventy miles an hour with car so out of control that he could not avoid meeting head-on a car approaching from the opposite direction in the act of passing another car also approaching from the direction opposite to that of the defendant. *Moore* v. *Bryan*, 52 Ga. App. 272. (4) The driver going fifty miles an hour on a curve and taking both hands off the wheel. *Dixon* v. *Company*, 56 Ga. App. 626. (5) The driver at night who swerved suddenly to his left, without checking his speed, and collided with a car coming in the opposite direction. *McLain* v. *Corporation*, 54 Ga. App. 103; *Atlantic &c. Corporation* v. *Newlin*, 56 Ga. App. 428. (6) The driver at fifty, on a wet road, who tuned his radio, with the result that he did not see a car approaching astride the middle line, whereas if he had seen it, he could have avoided the accident. *McDaniel* v. *Brown*, 61 Ga. App. 243. (7) The driver who, instead of using slight care by applying brakes in order to avoid a rear-end collision, increased speed and tried to pass on the right. *White* v. *Boyd*, 58 Ga. App. 219. (8) The driver at forty-five or fifty miles an hour who overtook a car without seeing it until too late to avoid running into it except by swerving to the left, where he collided with a car coming in the opposite direction. *Poole* v. *Yawn*, 45 Ga. App. 58.

As the Georgia cases have applied the rule, we think it clear that this case was properly submitted to the jury. It seems to come within the group of cases represented by *Frye* v. *Pyron*, *White* v. *Boyd*, and *Poole* v. *Yawn*. It does not seem to come within the group relied on by the defendant, where a driver looked backward because his attention was distracted by natural humane instinct, emergency, outcry or warning. *Harris* v. *Reid*, 30 Ga. App. 187; *Tucker* v. *Andrews*, 51 Ga. App. 841; as explained by *Crandall* v. *Sammons*,

62 Ga. App. 1. In all of those cases, the speed was below the maximum permitted by the statute. Where the speed exceeded the maximum and the look backward, not instinctive, resulted in a rear-end collision, the court held that the lack of attention might be found to amount to gross negligence. Either the driver should have seen the car ahead before looking backward, or she took a very long backward look. In either case, considering her speed, the jury could have found that she did not exercise slight diligence. *Pitcher* v. *Curtis*, 43 Ga. App. 622.

By a parity of reasoning, Rousseau might have been found lacking in slight diligence when, going more than fifty miles an hour, his attention with the face forward was so slight that he failed to make the obviously necessary attempt to keep his car from progressing so far at unchecked speed that the sole choices of action left to him were both attended with not merely possible, but findably probable, injury to the occupants of his car, thus bringing his conduct almost, if not quite, within the definition of wanton negligence (conscious indifference) which is the highest degree of gross negligence as the courts of Georgia have applied their definitions.

The statutory definition of gross negligence, applicable to care of property held by bailment, was originally "the want of that care which every man of common sense, how inattentive soever he may be, takes of his own property." Park's Annotated Code, *s*. 3473. The statute has been expanded by defining slight diligence thus: "In general, slight diligence is that degree of care which every man of common sense, howsoever inattentive he may be, exercises under the same or similar circumstances." Georgia Code (1933) *s*. 105-203. Slight diligence is the test used by the courts of Georgia since 1904. *Insurance Co. of North America* v. *Leader*, 121 Ga. 260, 272. As the test has been applied to varying sets of facts and circumstances, we think the defendant could be found to have failed to exercise slight diligence.

*Judgments for the plaintiffs.*

All concurred.