299 F.2d 637
 Kathleen DUDLEY (minor), by her next friend, W. G. Smith;
Lucille Dudley (minor), by her next friend, W. G. Smith; W.
G. Smith, Ancillary Administrator or the Estate of Samuel
Dudley, Deceased; and W. G. Smith, Ancillary Administrator
of the Estate of Letha Louise Dudley, Deceased, Appellees,
v.
INLAND MUTUAL INSURANCE COMPANY, Appellant.
 No. 8285.
 United States Court of Appeals Fourth Circuit.
 Argued April 18, 1961, Reargued Jan. 8, 1962.
Decided Feb. 8, 1962.
 
 Murray G. James, Wilmington, N.C. (James, James & Crossley, Wilmington, N.C., on brief), for appellant.
 Alan A. Marshall and Lonnie B. Williams, Wilmington, (N.C. (Poisson, Marshall, Barnhill & Williams, Wilmington, N.C., on brief), for appellees.
 Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 This appeal raises the question whether an automobile insurance policy issued by the Inland Mutual Insurance Company, defendant in the District Court, covered an automobile tractor and a trailer in a collision with another car in which a man and his wife were killed and their two minor children were injured. The tractor and trailer were not covered by the terms of the policy as written and issued to the insured but he testified that he had been told by the person through whom he procured the insurance that the vehicles were covered. The District Judge overruled an objection of the defendant to this testimony and submitted to the jury the question whether the policy covered the vehicles at the time of the accident and the jury found for the plaintiffs.
 
 
 2
 The insurance company issued an automobile liability insurance policy dated November 24, 1953, to A. L. Stewart of Fitzgerald, Georgia, for the period of one year ending November 21, 1954, which provided coverage for bodily injury or death to the limit of $5,000 for each person and $10,000 for each accident, together with coverage for property damage in the amount of $5,000. The policy contained an insuring agreement wherein the word 'automobile' was defined to mean the motor vehicle or trailer described in the policy, and the word 'trailer' was defined to include semitrailer. It also contained the following provisions with respect to coverage, exclusions and conditions:
 
 
 3
 'INSURING AGREEMENTS
 
 
 4
 'IV (c) Two or More Automobiles.
 
 
 5
 When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability.
 
 
 6
 'EXCLUSIONS
 
 
 7
 'This policy does not apply:
 
 
 8
 '(c) under coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company.
 
 
 9
 'CONDITIONS
 
 
 10
 '11. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; not shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the president, a vice-president, secretary or assistant secretary of the compnay and countersigned by a duly authorized representative of the company. * * *'
 
 
 11
 As originally written the policy listed under the description of the automobile:
 
 
 12
 #1-- 1952 International Tractor, Motor #19106, Serial #53366-R2,
 
 
 13
 #2-- 1948 Fruehauf Semi-Trailer, Serial #S.P-20947.
 
 
 14
 By radius endorsement No. 7 the coverage of the policy was limited to a radius of 300 road miles from Fitzgerald, Georgia.
 
 
 15
 Subsequently, in consideration of additional premium, the policy was changed by endorsements countersigned March 3, 1954 and effective March 1, 1954. Endorsement No. 7 was changed to provide unlimited area coverage.
 
 
 16
 Endorsement No. 27, entitled 'Change in Declarations,' noted the change in radius to unlimited area and listed under the description of the automobile the following:
 
 
 17
 #1-- 1952 International Straight Truck, Motor #19106, Serial #53366-R2
 
 
 18
 Ceases to cover on the following described automobile: 1948 Fruehaut Semi-Trailer, Serial $SP-20947.
 
 
 19
 Thus the coverage of the International truck described in the original policy was retained, except that it was described as a 'Straight Truck' and the coverage of the Fruehauf semi-trailer was eliminated.
 
 
 20
 On March 19, 1954, after the policy had been changed, the tractor described in the policy, while being operated by an employee of Stewart, the insured, came into collision with an automobile in which the intestates and their children were riding as passengers and injured them as aforesaid. At that time the tractor was towing a Great Dane trailer, which was owned by Stewart but was not covered by the policy. Suits on behalf of the injured persons against Stewart resulted in judgments of $3634.60 and $3127.95 for the infant children, respectively, and $40,000 and $20,000 for the estates of the deceased husband and wife, respectively, and a judgment of $800 for property damages. Executions upon these judgments were returned unsatisfied and thereafter the pending suit was brought against the insurance company.
 
 
 21
 As we have noted, it was provided in the exclusions that the policy did not apply while the tractor was used for the towing of a trailer owned by the insured and not covered by insurance in the company. Accordingly, the liabilities incurred in the accident did not fall within the terms of the written contract. It was also provided in the exclusions of the policy that the terms of the policy should not be waived or changed except by endorsement signed by the president, a vicepresident, secretary or assistant secretary of the company and countersigned by a duly authorized representative of the company. No such endorsement providing coverage for the International truck and the Great Dane trailer was attached to the policy. The plaintiffs, however, contend tlat coverage was provided for the vehicles by an oral statement made to Stewart by E.W. Strickland, as to which Stewart testified to the following effect. Stewart purchased all of his automobile insurance through Strickland, who operated as Mutual Insurance Agency. He said that Strickland was not his agent. When Stewart needed insurance it was his practice to call Strickland, who would come to see him, and Stewart would point out the vehicles which he wanted insured. The original policy of November 21, 1953, was acquired in this way and delivered to Stewart's office. On or about March 1, 1954, Stewart, desiring to change the radius of operation and also to change the trailer in the original policy, called Strickland and pointed out to him the tractor and the Great Dane trailer, which were then coupled together, and said that he wanted them covered by the policy. Strickland examined the vehicles, took down the motor numbers, and said they were covered. The endorsements through which the changes were made in the policy as of March 1, 1954, were however not delivered to Stewart until the day of the trial. Stewart paid all of the premiums on the insurance to Strickland and no offer was made by the company to return them. Stewart reported the accident to Strickland the day after it occurred and the company sent a representative to see him who was intoxicated and was asked to return but did not do so. Subsequently the company sent Stewart a letter dated May 6, 1954, denying liability.
 
 
 22
 On cross-examination Stewart admitted taht after the accident he signed a written statement dated March 26, 1954, in which he declared that he carried the original policy through broker Atlantic Insurance Company, Atlanta, Georgia, obtaining the policy from the J.L. Ewing Insurance Agency, Fitzgerald, Georgia, which was later taken over by Strickland. In this statement it was set out taht the policy covered the International trailer and the Fruehauf semi-trailer, and that on March 1, 1954, Stewart called Strickland and requested that he have the trailer removed from the policy and to increase the limitation of use from 300 miles to unlimited use, and that after the accident occurred he had asked Strickland to endorse the policy to cover the new trailer which Stewart had purchased. In this statement Stewart did not say that he had asked Strickland to cover the Great Dane trailer or that Strickland had agreed to do so. Stewart said he could not remember who came to see him to get this statement and did not recall who took the statement or the circumstances under which it was gotten or that he had signed it. He said he was upset on March 26th as the result of the accident on March 19th.
 
 
 23
 Upon the conclusion of the plaintiffs' testimony the defendant company moved the court to strike the evidence of Stewart in respect to his conversation with Strickland. This motion was denied. The defendant also moved for a dismissal of the action under the terms of the policy, but the court deferred action at that time.
 
 
 24
 In defense the company offered in evidence the signed statement of Stewart, above described, and also the testimony of one Harry L. Knight. He stated that he was the manager of Atlantic Insurance, Inc. and as such was the authorized representative of the defendant insurance company and its general agent in the States of Georgia, Florida, South Carolina, and Tennessee; that in November 1953 he issued and countersigned the original policy as the authorized representative of the company and that the business came to him through Ewing, who collected the premium and paid it to him. He further testified that he appointed all the agents for the company and that Strickland was not an agent of the company; that at Strickland's request by telephone he issued and countersigned the endorsements to the policy under which the changes above described were made. He added that his agency depended upon people like Ewing and Strickland to produce the business and bring it to him and that he would provide the insurance coverage in the course of a business transaction if requested by them to do so.
 
 
 25
 Strickland was not called as witness by either side.
 
 
 26
 At the conclusion of all the evidence the defendant renewed the motion to dismiss the action under the terms of the policy-- but the court deferred its ruling. In effect, however, the motion was denied by the submission of the case to the jury.
 
 
 27
 In his charge the judge in effect instructed the jury that the only controversy in the case was whether Strickland was the agent of the defendant company. He also said that there was no controversy as to the facts. He noted that Knight had testified that Strickland was not the agent of the company, but he said that if Strickland solicited insurance for the company and procured the policy in suit at Stewart's request and the company approved his actions and accepted the benefits of the business, then he was an agent of the company in law. The judge further instructed the jury that if they found that Stewart got his policy through Strickland and Strickland told him that the vehicles in the accident were covered by insurance, then as a matter of law Strickland was the agent of the company. He further instructed the jury as follows:
 
 
 28
 'If you should find that if at the time and place of this accident through the agency of Mr. Strickland the defendant had issued its policy of insurance and it was so modified as to cover the Great Dane trailer and that that was the intention of all parties that the insurance should cover the Great Dane trailer then plaintiff is entitled to recover. If it was not the intention of the parties and you find it was not the intention of the parties that the trailer should be covered then the defendant should prevail.'
 
 
 29
 The case obviously turns upon the question whether Strickland was the agent of the insurance company and if so, whether he had been clothed with actual or apparent authority by the company to cover the vehicles involved in the accident by oral agreement notwith-standing the provision in the written contract that no changes in the policy could br made except by endorsement signed by certain officials of the company. All of these questions were eliminated from the consideration of the jury by the judge's charge. Since they were told that the facts were undisputed and tlat the only question was whether Strickland was an agent of the company and that agency was proved if Strickland procured the policy, only the question of the intention of the parties was left for the jury to decide and their verdict for the plaintiffs followed almost as a matter of course. We do not think that this instruction was justified, for it cannot be inferred with certainty from the evidence that Strickland had either the real or apparent authority to bind the company by an oral agreement. It is true, as the defendant points out, that no exceptions were taken to the charge of the court and on this account it is urged that, under Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., errors in the charges may not be considered by this court. We think, however, that the attentiton of the trial court was called to the crucial point in the case by the defendant's motion to strike the evidence of Stewart regarding Strickland's statement on March 1, 1954, that the vehicles were covered. Moreover, for the reasons hereinafter set out, we think that the instructions were so plainly erroneous in this case that this court has the power to consider the questions involved in order that justice may be done. See Hormel v. Helvering, 312 U.S, 552, 61 S.Ct. 719, 85 L.Ed. 1037; Fei-Man Tzu v. Robertson, 4 Cir., 256 F.2d 578; Dowell, Inc. v. Jowers, 5 Cir., 166 F. d 214, 2 A.L.R.2d 442.
 
 
 30
 In cases of this sort the question frequently arises as to whether on who procures a policy of insurance for the insured is acting as the agent of the insured or the agent of the insurance company which issues the policy. The problem is discussed with clarity in the following lowing passage from American casualty Co. v. Ricas, 179 Md. 627, 631, 22 A.2d 484:
 
 
 31
 '* * * Authorities everywhere agree that an insurance agent, so far as the insurer is concerned, is a person expressly or impliedly authorized to represent it in dealing with third parties in matters relating to insurance, and an insurance solicitor, or broker, is one who acts as a middle man between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order, either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by the broker. Ordinarily, the relation between the insured and the broker is that between principal and agent. An insurance broker is ordinarily employed by a person seeking insurance, and when so employed, is to be distinguished from ordinary insurance agent, who is employed by insurance companies to solicit and write insurance by, and in the company. 29 Am.Jur. 86, p. 110; Cyclopedia of Insurance Law, Crouch Vol. 2, p. 1298; * * *.'
 
 
 32
 See also the discussion of the subject in Appleman, Insurance Law and Practice, Vol. 16, 8691, 8698, 8699, 8723.
 
 
 33
 The difficulty in applying these rules to the facts of a particular case is illustrated by the decisions in two cases in the Georgia courts upon which the parties to the instant case rely. Since the policy in this case was issued in Georgia to a resident of that State the law of that State governs. See Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398. The plaintiffs rely upon the decision of the Court of Appeals of Georgia in American Casualty Co. v. Callaway, 75 Ga.App. 799, 44 S.E.2d 400, in which the insurance company was held liable under an automobile policy, although the policy did not expressly cover the vehicles involved in an accident, because the insured had been told by the agent who procured the policy that the vehicles were covered and thereafter the company had issued the policy. On the other hand, it was held by the Supreme Court of Georgia in Fire & Casualty Ins. Co. v, Fields, 212 Ga. 814, 96 S.E.2d 502, upon which the defendant in the instant case relies, that the provision of a fire insurance policy, requiring a waiver of its terms to be in writting, was binding upon an insured and that a vacant building of the insured was not covered at the time of a fire although the agent of the company had told the insured that he was covered and had not occasion to worry.
 
 
 34
 Obviously the decision of the Supreme Court of the state in the Fields case, rether then that of the Intermediate Court of Appeals in the Callaway case, is the controlling authority in case of conflict. The plaintiffs, however, contend that earlier decisions of the Supreme Court of Georgia are controlling rather than the decision in Fields because it is provided by Section 6-1611 of the Georgia Code that a decision rendered by the Supreme Court of the state prior to the 1st day of January 1897 and concurred in by three judges cannot be reversed or materially changed except by the concurrence of a tleast five judges; and that unanimous decisions rendered after that date by a full bench of six judges shall not be overruled or materially modified except with the concurrence of six judges after argument in which the decision is expressly questioned and reviewed and after the decision has been distinctly affirmed, reversed or changed. Reference is made to the earlier cases of Simonton, Jones & Hatcher v. The Liverpool, London and Globe Insurance Co., 51 Ga. 76 (decided in 1874), and Swain v. Macon Fire Insurance Company, 102 Ga. 96, 29 S.E. 147 (decided in July 1897). In the Simonton case the court had under consideration a policy of fire insurance issued subject to a state statute which required that alterations of insurance contracts must be in writing. The policy as written did not cover goods at a location not specified in the contract and it was held that the insurance company was not liable for a loss of goods destroyed by fire at another location to which they had been moved although the insurance agent assured the owner at the time of the removal that he would have the policy amended to cover the new location. The decision was based on the failure to embody the change in the policy in writing.
 
 
 35
 In the Swain case a policy of fire insurance provided that other insurance on the property would void the policy unless specifically agreed to in writing in or upon the policy. The Supreme Court held that if the agent of the company had knowledge that other insurance had been secured the policy would not be voided although no special agreement in writing had been made. Cited with approval was Clay v. Phoeniz Insurance Company, 97 Ga. 44, 25 S.E. 417 (1895), where the defense was that a policy of fire insurance was void by reason of vacancy of the premises without notice to the company, and the company was held to be estopped from denying liability because the fact of vacancy was made known to an agent of the company who had full power to cancel the policy but permitted it to remain in force.
 
 
 36
 In the Fields case the Simonton case was cited with approval but the Swain case, handed down in 1897, was not mentioned and on this account the plaintiffs contend that Swain must be followed since it was not expressly overruled in Fields. The plaintiffs, however, concede that there is no conflict between Swain and Simonton and it would seem to allow that the citation of Simonton in Fields is not a departure from the rule laid down in Swain and hence there is no ground to invoke the provision of the statute that an earlier decision, not expressly over-ruled in a later decision, is still the law of the state. We must accept the interpretation given by the Supreme Court to its own decisions. Consequently, we conclude, as presently advised, that the decision in Fields, citing with approval its earlier decision in Simonton, contains an authoritative statement of the Georgia law. The pending case, however, must be remanded for a new trial and we do not mean to preclude the parties or the court from re-examining the applicable law of Georgia when the case comes up again fro trial.
 
 
 37
 Our attention has also been called to the decision in Corporation of Royal Exchange Assurance of London v. Franklin, 158 Ga. 644, 124 S.E. 172, 38 A.L.R. 626, in which it was held that under certain circumstances an insurer may be estopped from relying on a provision in the policy that no officer or agent shall have power to waive any of the terms of the policy unless such waiver is written upon and attached thereto. It was held, however, that the estoppel would not arise unless it appeared that the agent had the authroity to make the endorsement whereby changes in the policy were effected, and hence it is clear that this decision does not warrant an affirmance of the decision of the District Court below wherein the possession of the necessary authority by Strickland is the cardinal question that is still open for decision. If there is conflict between the Fields and Franklin cases the decision in Fields controls. Although Franklin was a prior decision rendered in 1924 it was decided by a divided court, four judges concurring and two dissenting, whereas Fields was decided by a unanimous court.
 
 
 38
 In the present case the most that can be said for the plaintiffs' position is that it is not clear whether Strickland was acting as agent for Stewart or for the defendant in procuring the changes in the insurance policy. Certainly the facts do not justify an instruction that amounted to a binding direction that Strickland represented the company in the transaction. For example, the statement signed by Stewart indicates that he procured the original policy through a broker who dealt with Ewing, the predecessor of Strickland, and Knight testified that he was the authorized representative of the insurance company with power to appoint agents and that Strickland was not as agent of the company.
 
 
 39
 This testimony was not consistent with the instruction that Strickland was the agent of the company. Moreover, the evidence as a whole was so scanty as to the relationship between Strickland and the parties to the contract of insurance that no determination can be made with confidence upon the crucial question in the case. Under these circumstances it is our view that the judgment of the District Court should be reversed and the case remanded for new trial.
 
 
 40
 Reversed and remanded.